Case 33.—PROSECUTION AGAINST CHARLES B. JONES FOR
    DETAINING A WOMAN AGAINST HER WILL, WITH IN-
    TENT TO HAVE CARNAL KNOWLEDGE OF -HER.—Oc
    tober 18.

## Jones v. Commonwealth.

Appeal from Franklin Circuit Court.

R. L. STOUT, Circuit Judge.

Defendant convicted and appeals.    Affirmed.

Criminal Law—Detaining Woman for Purpose of Carnal Inter-
    course—Evidence—Evidence on a prosecution, under Ky.
        Stats. 1903, sec. 1158, for detaining a woman against her
        will with intent to have carnal knowledge of her; that as she
        was driving on a highway defendant got on his horse and
        came facing her; that he pulled into the middle of the road
        and she pulled off to the side; that as she pulled off he pulled
        toward her; that she kept pulling off till she got clear off
        the road and he still pressed toward her, and that when she
        got in front of him and ran her horse he wheeled and galloped
        after her till she came in sight of her home, warrants a con-
        viction, though he did not touch her or attempt to touch her
        or her horse.

WALLACE & HARRIS and H. A. SCHOBERTH for appellant.

1. The verdict of the jury is contrary to both the law and the
evidence, is not sustained by the evidence, and is the result
of passion and prejudice on the part of the jury.

2. The court should have peremptorily instructed the jury, at
the close of the Commonwealth's testimony, to find a verdict of
not guilty.

3. The attorney for the Commonwealth, in the presence of the
jury, propounded to various witnesses illegal and incompetent
questions, which were calculated to, and did, prejudice the mind
of the jury against the defendant, contrary to both law and
justice.

4. A negro whose reputation was abundantly shown by the
evidence of the best citizens of Woodford county to have been
of that high character that but few men, black or white, attain,

Jones v. Commonwealth.

was convicted and sentenced to seven years in the penitentiary, without a scintilla of proof against him, but simply because he was a negro, and was charged with the crime of unlawfully detaining a white girl with intent to have carnal knowledge of her.

### AUTHORITIES.

Ky. Stats., sec. 1158; Paynter v. Commonwealth, 21 Ky. Law Rep., 1562; Riley v. Commonwealth, 21 Ky. Law Rep., 1442, 1443; Everheart v. Commonwealth, 7 Ky. Law Rep., 218; Cargell v. Commonwealth, 12 Ky. Law Rep., 149, 151.

N. B. HAYS, Attorney General, and C. H. MORRIS for appellee,

1. The statute, while it uses the words "take or detain," does not describe two offenses, but names one offense that may be committed either by a taking or a detaining. Proof of either the taking or detaining may be sufficient to convict, and a woman may be detained though the accused does not touch her person.'

2. Of the proof and the intent the jury is the judge, and if there is sufficient evidence to submit to the jury, or proof connecting the accused with the commission of the crime, the court will not be justified in taking the case from the jury.

OPINION BY CHIEF JUSTICE HOBSON—Affirming.

Appellant Jones was indicted in the Woodford Circuit Court for the offense of unlawfully detaining Miss Lucy Fogg against her will, with intent to have carnal knowledge of her. He was found guilty and his punishment fixed at seven years' confinement in the penitentiary. The chief question made on the appeal is that the evidence does not warrant a conviction.

Miss Fogg lives with her father about a quarter of a mile from Duckers Station, on the pike which leads from the Frankfort & Versailles pike to Duckers Station and about a mile from the Frankfort & Versailles pike. The pike leading from the Frankfort & Versailles pike to Duckers Station is a rather hilly road, has trees on both sides, few houses, and is rather a lonely road. Miss Fogg on the day in

question left her father's house on horseback about
2 or 3 o'clock in the afternoon, and went riding
with a friend who lived on the Frankfort & Versailles pike near the point where the Duckers Station
pike turns off. When they came back from their
ride and were on the Frankfort & Versailles pike,
the defendant and another negro man came along
the pike from the direction of Frankfort and turned
up the Duckers Station pike. Miss Fogg waited a
few minutes, and then, leaving her friend, started
home up the Duckers Station pike alone on horseback. What occurred is thus told in her own words:

"A. Just as I got to the top of the hill I looked
up and saw a man get off from behind some trees.
I couldn't tell whether he was white or black, and
I rode on; and when I got there I expected to see
the man, but didn't see him, and I looked up the
road and saw him under the tree, and he was off of
his horse; and when I got nearly to him, he got on
his horse and came facing me, and he pulled into the
middle of the road and I pulled off onto the side;
and as I pulled off, he pulled towards me, and I kept
pulling off until I got clear off of the road, and he
still pressed towards me. I was riding slow, because
I was afraid to go fast, for fear he would get in front
of me and stop me, and when I got even to him he
said something I didn't understand, and when I got
in front of him he wheeled his horse."

"Q. What sort of horse was he riding?"

"A. A bay horse, with a bald face and several
white feet."

"Q. When he said something to you, what did you
do?"

"A. I hit my horse and started, and he wheeled
and followed me."

"Q. Did you go when you started?"

"A. I started in a lope, and as he was gaining time on me I started my horse, and he ran with me and nearly threw me once."

"Q. How did he come—slow or fast?"

"A. He was gaining time on me all the time, coming fast."

"Q. What did you do?"

"A. I screamed." * * *

"Q. How far did he follow you as your horse ran with you,"

"A. About 150 yards. It was in sight of our house. You could see the house when he turned and left?"

"Q. Could your house be seen at the point he said what he did to you?"

"A. No."

"Q. Did he turn when he got to where you could be seen from your house?"

"A. Yes."

"Q. What direction did he take when he ceased to follow you?"

"A. He went towards the Frankfort & Versailles pike."

"Q. The same way you had come?"

"A. Yes."

On cross examination she also said this:

"Q. How close did he get to you?"

"A. Right by the side of me."

"Q. Close enough to have touched you?"

"A. Yes."

"Q. He did not touch you?"

"A. He did not."

"Q. He did not attempt to touch you?"

"A. No."

"Q. He was close enough to have caught hold of you?"

"A. Yes."

"Q. Was that when you were riding fast?"

"A. No, I wasn't riding fast then."

"Q. Did he just ride up to the side of you?"

"A. He kept pressing me off of the road all the time, riding towards me all the time."

"Q. Did he touch your horse?"

"A. No."

"Q. He didn't get in front of you at all?"

"A. No."

"Q. He did not touch you, or attempt to touch you, and was close enough to have caught hold of you or to have seized you, if he had desired. This is true, is it not?"

"A. He was riding, pressing me off of the road."

"Q. The question is, he did not touch you, he did not attempt to touch you, he was near enough to have touched you if he had tried. Is not that true?"

"A. Yes; I suppose it is."

"Q. He did not get in front of your horse, did he?"

"A. No."

"Q. He did not touch your horse?"

"A. No; but I had to go slow because I was afraid to go fast for fear he would pull right in front of my horse."

"Q. He did not stop your horse, and did not slacken the speed of your horse?"

"A. Yes, sir; because I was afraid he would pull in front of my horse."

"Q. He did not try to?"

"A. He kept pushing me off of the road."

"Q. He did not get in front of your horse, and did not try to get in front of your horse, did he?" (Objected to by plaintiff; objection overruled to which it excepted.)

"A. He kept pushing over as if he would just as soon get in front of it as not."

Jones v. Commonwealth.

"Q. I don't think you answered the question. I don't want to worry you. (Objected to by plaintiff. Objection overruled, to which it excepted.) He did not get in front of your horse, he did not try to get in front of your horse, did he, Miss Fogg?"

"A. He did not get in front of my horse."

"Q. You were riding slow?"

"A. Yes."

"Q. If he had attempted to have gotten in front of the horse, couldn't he have done it?"

"A. I suppose he could."

The evidence of Miss Fogg is confirmed by several other witnesses, who saw the defendant on the Frankfort & Versailles pike that evening riding the bald-faced horse with white hind feet. While he denies leaving the Frankfort pike, her testimony is sustained by her friend who was with her and by other circumstances. He testified that he had been drinking whisky and it may be that he does not remember very clearly what he did. Still the great weight of the evidence sustains the verdict of the jury as to the identity of the offender.

So the case comes simply to this: Do the facts above stated constitute detaining a woman against her will for the purpose of having carnal knowledge of her, or are they sufficient to go to the jury on that question? The statute is in these words: "Whoever shall unlawfully take or detain any woman against her will, with intent to marry such woman, or have her married to another, or with intent to have carnal knowledge of her himself, or that another shall have such knowledge, shall be confined in the penitentiary not less than two nor more than seven years." (Ky. Stats. 1903, sec. 1158.)

The evidence of Miss Fogg is to the effect that the defendant got on his horse and came facing her;

that he pulled into the middle of the road and she pulled off to the side, as she pulled off he pulled towards her, she kept pulling off until she got clear off the road, and he still pressed towards her. When she got in front of him, he wheeled his horse and followed her. He did not touch her, or attempt to touch her or her horse. He simply pressed her off the road. It is not necessary that the defendant should take physical hold of the woman in order to constitute a detention. If she is detained by him for the purpose of having carnal knowledge of her, he is guilty, although the detention is slight in point of time and no physical force is actually used. Under the facts stated the woman was not only detained on the highway, but was forced off the highway, and when she succeeded in getting past the defendant he wheeled his horse and followed her at a rapid gait. If he had merely ridden in front of her and had not followed her, there would be more force in the position that there is no evidence to show that he detained her with intent to have carnal knowledge of her. But when he galloped after her, and she had to run her horse to get away from him, and he followed her until she came in sight of her home, we can not say that there was no evidence to go to the jury on this question.

.The case is unlike Riley v. Commonwealth, 55 S. W., 547, 21 Ky. Law Rep., 1442. In that case the defendant was riding along the county road, and the woman was walking along the railroad, which ran near by. He asked her some questions, and she ran away from him; but he did not in any manner obstruct her in her course along the railroad, or in any way in fact detain her. In Riley v. Commonwealth, supra, the woman was on one side of a railroad cut and the man on another. Both continued

on their way, he being on horseback and she on foot, and, as in the other case, there was no actual detention.

The Commonwealth attorney, wrongfully, in the presence of the jury, asked the witness, James Hackney, a question which was improper. The court sustained the defendant's objection to the question, and he was not asked to do anything more. The improper asking of this question is not, therefore, ground for reversal.

Judgment affirmed.