## McKey v. Commonwealth.

(Decided November 21, 1911.)

### Appeal from Ohio Circuit Court.

1. Unlawfully Detaining Woman Against Her Will—Peremptory Instruction—Evidence Sufficient to Justify Submission to Jury.— Where the accused discovered that the prosecuting witness was traveling the road in the same direction he was going; that he walked slowly, apparently for the purpose of forcing her to come up to him, or attempt to pass him; that he repeatedly looked at her over his shoulder; that he crossed a wire fence and demanded that she come to him, and when she ran, ran after her parallel down the fence, these facts were sufficient to submit the case to the jury in a prosecution for unlawfully detaining a woman against her will.

2. Instructions—What Necessary to Constitute Offense.—In order to constitute the offense of unlawfully detaining a woman against her will, it must be against the will of the woman and for the purpose of carnally knowing her, and in a prosecution for the offense the omission in an instruction of the words "against her will," was error.

G. B. LIKENS for appellant.

BEN D. RINGO, C. E. SMITH, JAMES BREATHITT, Attorney General, CHAS. H. MORRIS for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

Will McKey, a negro, was indicted by the grand jury of Ohio County at its October term, 1910, charged with

the crime of unlawfully taking and detaining a woman against her will with intent to have carnal knowledge of her. To this indictment he entered a plea of not guilty. A trial before a jury resulted in his conviction, and he was given an indeterminate sentence of from two to seven years imprisonment in the penitentiary. He appeals.

His counsel seeks a reversal upon four grounds: First, that the indictment is defective and the demurrer thereto should have been sustained; second, that incompetent evidence calculated to prejudice the minds of the jury, was permitted to be introduced; third, that a peremptory instruction should have been given at the conclusion of the evidence, inasmuch as it failed to show either a taking or detention; and fourth, that the instructions as given by the court were erroneous.

As to the first objection it is simply necessary to state that, under section 122 of the Criminal Code, the indictment must contain, first, the title of the prosecution, name of the court and parties, and second, a statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended; and with such degree of certainty as to enable the court to pronounce judgment upon conviction according to the right of the case. By section 124 of the Criminal Code it is provided that the facts which must be stated with certainty are, first, the name of the party charged; second, the offense charged; third, the county in which the offense was committed; and fourth, the circumstances of the offense, that is, the particular circumstances of the offense charged. The indictment in the case at bar conforms to all these requirements, unless it be, as contended by counsel for appellant, that the acts constituting the offense are not set out with sufficient particularity. The indictment charges the offense substantially in the language of the statute, and section 136 of the Criminal Code expressly provides that the offense need not be charged in the exact words of the statute if other words are used conveying the same meaning. Indictments in this form were, in Davis v. Commonwealth, 13 Bush, 318, Ward v. Commonwealth, 14 Bush, 233, and Mitchell v. Commonwealth, 88 Ky., 349, held to be good.

The second objection is that incompetent evidence was permitted to go to the jury. A critical examination of the record satisfies us that this point is not well taken.

But few questions were asked to which objection was made, and in most instances where the question was raised the rulings of the court were in appellant's favor, and the jury was admonished not to consider the questions and answers to which objection was made when they tended to show that, at the time of appellant's arrest by a posse, he had made statements prejudicial to his interest.

The third ground relied upon for a reversal is that the court erred in not peremptorily instructing the jury to find for the defendant. This motion was based upon the idea that the evidence of the prosecuting witness utterly failed to show either a taking or detaining of her by the accused. In order to arrive at a proper determination of this question her evidence alone must be considered. She testified that upon the day upon which the defendant was charged with having detained her she had gone from her home to the neighboring town of McHenry, and was returning home along the railroad; that after she had passed beyond the outskirts of the town of McHenry she noticed a negro ahead of her, and from his actions she became suspicious and alarmed. She then walked more slowly in order to give him an opportunity to get out of her way, but when he noticed that she had slackened her speed, he likewise slackened his, and frequently turned and looked at her. This conduct thoroughly frightened her. After going a short distance she met one Gilstrap. She did not stop or ask him to go with her, or tell him of her fear of the negro, but continued on her way home. After Gilstrap was some six hundred yards or more from her, and out of hearing, the negro sat down on the railroad track. She was then about twenty feet from him. About this time she attempted to pass him a freight train came along, and he got down off of the track and climbed through a barb wire fence, and said to her, ''Come over here. You are going to come over here. You had better come over here.'' With that she started and ran screaming down the track. The negro ran down on the inside of the wire fence, which separated the railroad right of way from the adjoining pasture. They ran for quite a distance, until she came in sight of some men at work on the railroad. Clearly the acts complained of as done by accused do not amount to a taking; and unless the conduct of appellant amounts to a detention, the Commonwealth failed in its proof.

In Riley v. Commonwealth, 55 S. W., 547, this court was called upon to review a state of facts in many respects similar to those here presented. There a Mrs. Mitchell testified that she was traveling along a path on the right hand side of the railroad going towards Pittsburg, and when about opposite Reed's barn the accused called to her from the other side of the railroad and asked her if she was Mrs. Ross. She answered "No." Appellant then asked her where she was going. She answered, "None of your business." Appellant then drew a pistol and said, "Don't be so damned smart or I'll blow your brains out. I've got some money for you." Witness declined the money and said she was a lady. At the time this conversation took place appellant was on horseback and on one side of a railroad cut twelve or fifteen feet deep, and the witness was on the other side of the cut. The horse could not have been ridden over the cut, and it is doubtful if any man could have climbed the bank. Appellant and the witness both continued on their way, both going toward Pittsburg. The accused was drunk. It was held that this conduct on the part of the accused did not amount to a detention. It will be observed in this case that the accused made no demonstration toward an attempt to stop the prosecuting witness, nor did he obstruct her passage along the highway. He simply made proposals to her which she construed to be indecent, and used language otherwise insulting to her.

Again, in Jones v. Commonwealth, 28 Rep., 213, this court was called upon to pass upon this question, arising out of the following state of facts: The prosecuting witness, a young girl, was returning home, when she saw a man get out from behind some trees. He disappeared from sight, but when she got near the place where she had seen him, he got on his horse and came riding towards her in the middle of the road. She pulled her horse to one side, and he rode near to her. She kept riding away from him until he forced her off the road. She testified that she rode slowly because she was afraid to ride fast for fear he would get in front of her and stop her. When he got even with her he said something that she did not understand. From that point she rode rapidly toward home, screaming, and he followed her some hundred and fifty to two hundred yards, until she came in sight of her home, when he stopped. This was held to be a detention,

the court saying that, while he did not touch her or attempt to touch her or her horse, he forced her off the road; that "it is not necessary that the defendant should take physical hold of the woman in order to constitute detention. If she is detained by him for the purpose of having carnal knowledge of her he is guilty although the detention is slight in point of time and no physical force is actually used. * * * If he had merely ridden in front of her and had not followed her there would be more force in the position that there is no evidence to show that he detained her with intent to have carnal knowledge of her. But when he galloped after her and she had to run her horse to get away from him and he followed her until she came in sight of her home, we cannot say that there was no evidence to go to the jury on this question."

Again, in Copenhaver v. Commonwealth, 31 Rep., 1161, the prosecuting witness, a fourteen-year-old girl, was left alone at the home of her employer. The accused went there on some matter of business. After learning that the girl was alone in the house he behaved so as to arouse her suspicion. She retreated into the house, he following against her protest. He then advanced to within three feet of her, with such demonstrations as fully alarmed her, when she fled, calling for help. He pursued her for some distance, but as persons appeared coming to her aid, he fled. There were circumstances indicating that he had the purpose charged in the indictment, that is, to carnally know her. The court held that these acts on the part of the accused constituted a detention within the contemplation of the statute.

Applying the principles announced in these cases to the case at bar, we cannot say that the facts as detailed by the prosecuting witness do not constitute some evidence of a detention. The fact that the accused, when he discovered that the prosecuting witness was traveling the road in the same direction in which he was going, walked slowly, apparently for the purpose of forcing her to come up to him, or attempt to pass him, his repeated looks at her over his shoulder, his calling to her in the manner in which she says de did after he had crossed through the wire fence, and his running down the fence and parallel to the railroad when he saw that she was thoroughly frightened and trying to get away, were sufficient to justify the submission of the case to the jury.

The motion for a peremptory instruction was properly overruled.

The complaint that the court did not properly instruct the jury is well taken. In order to constitute this offense it must be against the will of the woman and for the purpose of carnally knowing her. In the instruction given the court omitted the words "against her will," the instruction being as follows:

"If you believe from the evidence you have heard in this case to the exclusion of a reasonable doubt that in Ohio county and before the finding of the indictment in the case and since the 15th day of June, 1910, the defendant did wilfully, unlawfully and feloniously take and detain Miss Minnie Tinsley with the felonious purpose and intention of having sexual intercourse with her himself, then you should find him guilty as charged in the indictment and say in your verdict 'We of the jury, find the defendant guilty as charged.' "

Under this instruction, if the detention had been with the consent of the prosecuting witness, the jury would have been required to find him guilty. The gravamen of the offense charged is the unlawful detention and it was error in the court not to instruct the jury that, before they could find the accused guilty, they must believe from the evidence that he detained the prosecuting witness against her will for the purpose of carnally knowing her. The omission of these words, "against her will," rendered this instruction fatally defective.

Practically this same question was passed upon by this court in Wilder v. Commonwealth, 81 Ky., 591, in which it is said:

"Detention against her will is the main ingredient of the offense denounced by the statute. It does not require that the carnal knowledge shall be against her will, or that the intent to have carnal knowledge of her shall be coupled with the purpose of doing so against her will. Before any person can be lawfully convicted under the statute, which is subject to easy perversion of misuse, it must be alleged and proved that the female was taken or detained against her will. Words or acts of persuasion merely are insufficient, although they may detain the female, to constitute the offense. There must exist such acts or threats as compel her to submit against her own will or inclination to the control of the accused with the intent on his part to have carnal knowledge."

Because of the error in this instruction the judgment is reversed and cause remanded for a new trial consistent with this opinion.