## Teater v. Commonwealth.

(Decided October 19, 1926.)

### Appeal from Madison Circuit Court.

1. Abduction.—Evidence held sufficient to take question of defendant's guilt for felonious detention, under Kentucky Statutes, section 1158, to jury, and to sustain conviction.

2. Criminal Law.—Defendant's evidence, so far as it supplements that of Commonwealth, may be considered on appeal in determining his right to directed verdict.

BURNAM & GREENLEAF and G. MURRAY SMITH for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Lewis Teater was convicted of felonious detention under section 1158, Ky. Statutes, and his punishment fixed at two years in the state penitentiary. On this appeal it is urged that he was entitled to a peremptory instruction to find him not guilty.

Walter Murphy and Lewis Teater are agricultural tenants living in the same neighborhood. Sarah Belle Murphy, wife of Walter, testifies that on the morn of the 6th of August, 1925, Teater came to her home, entering the front door and walking out into the kitchen where she was washing dishes, there being no one else

in the house; that he asked her where her husband was and she told him he was at work at Murphy's about a mile distant, and he said, "Let's put it over on Walter today," and I told him that I was not that kind of a, -woman, and drove him off twice and he would not go, and he asked me that three times.

"Q. Just tell the jury in the exact language he used. A. He asked me three times to do it, and I told him I was not that kind of a woman.

"Q. What did you do? A. I didn't do anything but stand back and cry.

"Q. Did he do anything else? A. No, sir, he was on one side of the table and I was on the other, and when I would start to the middle door he would get in between me and the door.

"Q. Did you start out of the house? A. Yes, sir.

"Q. Why didn't you get out? A. Because he headed me off at each door.

"Q. Then what happened? A. That was all he said, and when he started out he said, 'Don't you tell this, you had better not tell it,' that was all he said, and he went on, and I don't know where he went to.''

That a moment or two after he left, Mrs. Smith, a neighbor who lived about four hundred yards away, came in. Mrs. Smith testifies that she visited Mrs. Murphy that morning and when she arrived Mrs. Murphy was scared and crying; that she had seen appellant going in that direction some two or three hours before but did not see him on this occasion.

Appellant testifies that he had lived a near neighbor to the Murphy's several years and knows the prosecuting witness well; that the evening before the alleged act complained of, both he and she were at a meeting at a nearby country church; that she was seated on a bench next the window and he was standing by the window on the outside of the church and had a conversation with her at that time in which she told him, "Come down there (her house), that her man was going to be away the next morning," that he went down and found her alone and she received him cordially and showed him a number of articles she had just received from a

department store, told him, 'Her man had got so he was not jealous of me;' that they did caress and hug and kiss each other and had some talk of a lascivious nature, but he did not ask her to have intercourse with him; that while they were doing this somebody or something made a *racket* at the door and that he left as quickly as he could without ascertaining who or what it was making the noise; that he did not know whether she was crying or not.

Quite a number of witnesses who were on the outside of the church on the evening before testify that they observed appellant and the prosecuting witness engaged in conversation through the open window as indicated by him and that she was laughing, though they did not hear what she said. This is denied by Mrs. Murphy and also contradicted by a lady who was sitting near her in the church.

Epitomized the evidence for the Commonwealth is that the parties were alone in the house; that the defendant solicited Mrs. Murphy to have sexual intercourse with him and she declined, and ordered him to leave; that he would not do this and she made two attempts to pass through the open doors and that he intercepted her both times, finally leaving with an implied threat. If true this conduct is more than a mere solicitation to commit the sexual act. While not a taking, if he prevented the witness from exercising her free volition and detained her in the room against her will, this would constitute a detention within the meaning of the act.

Aside from this appellant admits that his purpose and intention was to have sexual intercourse with her and that he did take hold of her, his defense being that this was with her consent, and his evidence, so far as it supplements that of the Commonwealth, may be considered on appeal in determining his right to a directed verdict. Bevins v. Com., 204 Ky. 444. We think the evidence sufficient to take the case to the jury and to sustain the verdict. Jones v. Com., 28 Rep. 213; Copenhaver v. Com., 31 Rep. 1161; Wilden v. Com., 81 Ky. 591; McKey v. Com., 145 Ky. 450.

Wherefore, perceiving no error, the judgment is affirmed.