### Tinsley v. Commonwealth.

(Decided November 29, 1927.)

### Appeal from Knox Circuit Court.

1. Abduction.—Pursuing prosecutrix at distance of approximately 350 feet, but not intercepting, hindering, delaying, or causing her to change her route, held not "detention," within statute punishing unlawful taking or detaining woman against her will.

2. Criminal Law.—When facts are insufficient to constitute crime, court should give peremptory instruction to find defendant not guilty.

H. H. OWENS for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Kelly Tinsley was sentenced to a term of 3 years in the state penitentiary for the crime of unlawful detention of a female, against her will, and with the intention to have carnal knowledge of her. On this appeal it is insisted that the court erred in the introduction of evidence and in failing to give a directed verdict in defendant's favor. The prosecuting witness, Rosie Partin, is 20 years of age and was employed at the bus terminal at the south end of Barbourville, her home being some distance north of the city. In going to work she traveled south to the railroad crossing, at which point the tracks are intersected by Johnson's lane, an asphalt road, which after passing the tracks runs parallel therewith northwesterly on the western side thereof five or six hundred yards to a pile of rubbish called the "junk pile," at which point it turns sharply to the west and 300 yards further connects with a city street. At the last inter-

section there is a brick store and south of the street a number of residences. About midway between the railroad crossing and the junk pile the asphalt road is crossed by a railroad siding leading down to a brick plant, and there are a number of houses about 100 yards below that intersection. The Dixie Highway also parallels the railroad tracks on the west to a point near the asphalt crossing above mentioned and north of this point turns to the right up the hill, the asphalt road connecting with it about 100 yards from where it crosses the railroad and at a point near Johnson Riley's store which is located on the east side of the Dixie. Riley also has a residence just beyond his store, the front of his residence being set back even with his store. There is another residence just beyond Riley's store on the east side of the Dixie. The defendant lived on the Dixie Highway opposite the latter residence and 300 yards from the intersection of the asphalt road and the railway intersection.

The prosecuting witness states that on Sunday morning, April 5, 1927, she started to her work traveling the railroad to the asphalt road intersection. As she reached this point her attention was attracted to a passing automobile on the Dixie. Upon looking up she saw the defendant on his porch waving to her. His house was upon a high embankment, and he ran down the steps and started in her direction; that she was alarmed and ran up the asphalt road as fast as she could; that when she reached the turn of the road at the rubbish pile she looked back and saw defendant by the side of the asphalt road some 400 feet to her rear. She ran on to the brick store and then looked back again and saw the defendant about halfway between the brick store and the rubbish pile; that at that time he called to her, "Hello, wait," but that she did not wait, but went on to her work.

The defendant denies all of these statements, and denies seeing her, and claims that at the time complained of he was picking up coal from the railroad tracks and carrying it home, and proves by the Rileys that they saw him carrying three sacks of coal. Other witnesses testify that his home and the Dixie Highway in front of his house cannot be seen from the road crossing.

In Jones v. Com., 121 Ky. 266, 89 S. W. 174, 28 Ky. Law Rep. 213, the prosecuting witness was riding on horseback. The defendant mounted his horse and faced

her in the middle of the road. She undertook to pull to one side, and he approached nearer. She finally rode around him out of the highway and ran her horse, pursued by him, until she came in sight of her father's house. This was held to be detention within the meaning of the law.

In Gibson v. Com., 104 S. W. 351, 31 Ky. Law Rep. 945, the defendant went to the residence of the witness' father, inquiring if he was at home. She told him that he was not and to return the following morning. He then went to a tree nearby and shortly afterward returned to the house. The only persons in the house were three young ladies who closed and fastened the doors and windows. Defendant tried to force the doors and windows, but was unable to enter. Two men came by, and he ran off. This was held to be within the statute.

In Copenhaver v. Com., 104 S. W. 750, 31 Ky. Law Rep. 1161, the prosecutrix, a 14 year old girl was alone at the home of her employer. The defendant came in the house ostensibly on business. He learned that she was alone, went away, returned to the house, and followed her over her protest, advancing to within three feet of her and making demonstrations that alarmed her. She fled and he pursued her some distance. The appearance of other persons caused him to desist. This was held to be within the statute.

In McKey v. Com., 145 Ky. 450, 140 S. W. 658, the prosecutrix was walking a railroad track in the country. Defendant was just ahead of her going in the same direction. She slackened her speed and he did likewise, looking at her repeatedly. A man met them going in the opposite direction and after he had passed out of hearing the defendant sat down on the railroad 20 feet ahead of her. She attempted to pass him, and he got off the track and went through a barbed wire fence, saying, "You are going to come over here, you had better come over here." She ran screaming, and defendant also ran along on the opposite side of the fence until they came in sight of some men at work on the railroad. This was held within the statute.

It is well settled that a person may be detained without a physical taking, and from the above citations it will be noted that the court has given a liberal definition of the word "detention," but in no instance has it

been held that a case was made out where it was not shown that the prosecutrix had in some way been hindered or prevented from going to or where she desired. And in all the cases mentioned the parties were in such proximity to each other as reasonably to enable the defendant to make an assault upon the prosecutrix. True, evidence as to pursuit has been freely admitted as part of the res gestae, and as proof of motive where under all the facts a detention is shown. But here it is not claimed that the defendant was ever within 350 feet of the prosecutrix; he did not intercept, hinder, nor delay her, nor cause any change in her route. The most that can be said is that he pursued or chased her at long range. Unexplained, this conduct is reprehensible, and it might be inferred that he acted with a wrongful purpose, but it would be an anomaly in law to say that such acts constituted a detention.

It follows that the court should have given a peremptory instruction to find the defendant not guilty. Much complaint is made of incompetent evidence, but under the conclusions reached, supra, it is not deemed necessary to consider this.

Wherefore the judgment is reversed and cause remanded for proceedings consistent with this opinion.