## Woodward v. Commonwealth.

(Decided Sept. 26, 1933.)

BLAKEY & HOWELL for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

Bill Woodward has been convicted in the Lee circuit court of the crime of detaining a woman against her will with the intention to have carnal knowledge of her. By this appeal he is urging as grounds for

reversal that the lower court erred in overruling his motion for a peremptory instruction and in admitting incompetent and prejudicial evidence.

Appellant and Sam Racner, husband of the prosecutrix, were tenants on adjoining farms, and on the day the offense is alleged to have been committed appellant went to the Racner home to get some milk. It appears in evidence that the Racners had been giving milk to appellant's family. Some time after appellant had procured the milk and left for his home, Mrs. Racner started to the home of her mother-in-law to get some tomato plants. On her way she came upon appellant, and we take from the transcript of the evidence her recital as to what then occurred.

"Q. Tell the jury where you saw him first and what he did? A. He had been to our place after milk; we had been giving them milk, and he had been there to get his milk and left, and when I got to the top of the ridge there is a gap to go through, and as I went through the gap there he stood by the stump looking up at a tree, and I passed by him and said, 'What are you looking at?' and he said, 'A squirrel,' and I passed on walking fast and just before I got to the road I heard something and he was behind me, that gave me a scare and I stepped up a little faster, and he walked faster too, and when he come to where he ought to have turned off to go to his home he followed me on out to my road and told me to stop, and I looked around to see what he meant, and there he was with his old clothes all unbuttoned and his hands in his pants—

"Q. What part of his clothes were unbuttoned? A. In front here (indicating).

"Q. And where were his hands? A. They were in there too, just going back and forth, and that scared me, and he told me to stop and told me what he was going to do, told me 'he was going to cuckold Sam Racner,' and I stopped and I told him he had joined our church a few days before that, and I told him I would have him turned out of the church; and I kept going backwards until I got away; and I told him I would have him in Court too."

Appellant testified that he went to Racner's about 4 o'clock in the afternoon to get the milk, and when about a quarter of a mile from their home, on his return, he saw some squirrels and was standing watching them when the prosecutrix came up; that she stopped and asked him what he was looking at and he told her he was watching some squirrels. She replied that she had seen them a number of times when passing, and as she went on he asked her about cuckolding Sam Racner, and that was all he said to her; that he did not run after nor attempt to detain her.

To complete the offense charged in the indictment there must have been a detention against the will of the prosecutrix accompanied by an intention upon the part of the accused to have carnal knowledge of her. Unquestionably under the evidence the detention, if any, was against the will of the prosecutrix, and the evidence of appellant himself clearly indicates his intention.

In disposing of the first ground urged for reversal it remains to be determined whether his acts as disclosed by the evidence were sufficient to constitute detention within the meaning of the statute (Kentucky Statutes, section 1158). At the outset it might be said that mere solicitation to have sexual intercourse does not constitute crime within the meaning of the statute, but in order to complete the offense there must be some character of detention; however, it is a well-recognized rule that detention may be committed without the use of actual physical force.

In the case of Jones v. Commonwealth, 121 Ky. 266, 89 S. W. 174, 28 Ky. Law Rep. 213, a judgment of conviction was upheld under this section of the statute, when according to the evidence of the prosecutrix, while she was driving on a highway, accused riding a horse came facing her and pulled his horse into the middle of the road. When she attempted to turn to one side he would ride over in the same direction until she was forced off the road. When she finally succeeded in getting in front of him she ran her horse and he followed her until she came in sight of her home. He did not touch or attempt to touch her or the horse she was driving. In the course of the opinion it is pointed out that the case is unlike that of Riley v. Commonwealth, 55 S. W. 547, 21 Ky. Law Rep. 1442, where the

accused was riding along the country road, and the prosecuting witness was walking along the railroad nearby. He asked her some questions and made some remarks indicating an improper intention and she ran away, but he in no way attempted to obstruct her in her course. This court, in reversing the lower court's judgment of conviction, held that Riley was not guilty of the crime denounced by the statute.

In the case of Teater v. Commonwealth, 216 Ky. 170, 287 S. W. 537, 538, Mrs. Teater and the accused were alone in the house when he solicited her to have sexual intercourse and she declined. She ordered him to leave the house but he refused to do so, and twice when she attempted to leave, intercepted her by placing himself between her and the door. After the recital of the evidence, this court, in affirming the judgment of conviction, said:

> "If true, his conduct is more than a mere solicitation to commit the sexual act. While not a taking, if he prevented the witness from exercising her free volition and detained her in the room against her will, this would constitute a detention within the meaning of the act."

In Tinsley v. Commonwealth, 222 Ky. 120, 300 S. W. 368, 369, the prosecuting witness testified that while walking along the railroad tracks she observed accused on his porch waving to her. He ran down the steps from his home which was on a high embankment and started in her direction. She became alarmed and ran; he followed and called to her to wait. In reversing the lower court's judgment, it was among other things said:

> "It is well settled that a person may be detained without a physical taking, and from the above citations it will be noted that the court has given a liberal definition of the word 'detention,' but in no instance has it been held that a case was made out where it was not shown that the prosecutrix had in some way been hindered or prevented from going to or where she desired."

While the evidence of Mrs. Racner and appellant's own admission show his conduct to have been most reprehensible, it will be seen from the foregoing review of former opinions by this court as well as from many

of like import which have not been cited that no judgment of conviction for the crime charged in this indictment has been upheld unless it appeared from the evidence that the free volition of the prosecutrix had been interfered with, or that she had in some way been restrained from following her own course or going where she desired.

Under the evidence in this case, it is manifest that appellant did not intercept Mrs. Racner or in any way restrain her or cause her to deviate from her course, or hinder or prevent her from going on to the home of her mother-in-law. In such circumstances we are constrained to hold that the element of detention necessary to complete the offense is lacking, and therefore the court erred in not sustaining appellant's motion for a directed verdict of acquittal. This conclusion renders it unnecessary to consider other grounds urged by appellant.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.