## Muncy v. Commonwealth.

(Decided Oct. 4, 1938.)

HUGH RIDDELL for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The appeal is from a conviction of the crime of de-

taining a woman against her will with the intent to have carnal knowledge of her, with a sentence of two years in prison. Section 1158, Statutes.

The alleged victim, Katherine Frazier, was about 19 years old and we infer the accused was about the same age. Main Street of Irvine goes to the railroad which runs between the end of the street and the river. The railroad is some 20 feet lower. There is a path between the street and the railroad which is habitually used by pedestrians, it being a way to and from the station and a part of the town. Near by is the River View Hotel and a building which, on this occasion, was being used as a W. P. A. sewing room. Somewhere along this path is a well shelter or tool house. According to the uncontradicted evidence of the accused, he met up with the young lady in the business district on the afternoon of February 7, 1938, and they walked down to the end of Main Street holding hands. They there stopped to talk. Shortly Eudell Tuggle and others passed going toward her home and Miss Frazier said she was going to stay all night with Eudell.

"I said, 'Let's wait until they get up the railroad,' and she said, 'Take me home.' I said, 'She don't like me,' and she said, 'All right.' I said, 'Let's go over to this little house,' and she said, 'All right.' I had her by the left hand and we were coming back this way. She said, 'All right, we will go there and stand until she gets to the top of the bank.' I said, 'I won't go to the house because she don't like me, but I will go part of the way.'"

Katherine Frazier's testimony is very meager. As to the occurrence it is only this:

"Q. What did he do to you? A. Nothing, he just took hold of my arm and pulled me. Q. Where did he pull you to? A. Down to the little old house, down there. Q. And did Mr. Barnett come up about that time? A. Yes, sir. Q. What about Mr. Hall, did he come up there too? A. Yes, sir. Q. Had you been talking to Frank Muncy before? Yes, sir. Q. What were you talking about? A. Just talking. Q. How come him to pull you behind the house? A. I don't know. Q. Did you push back from him? A. Yes, sir. Q. And did you try to get away? A. Yes, sir."

Grandord Hall testified that as he was passing he heard the couple talking loud. She said she had to go home and when she would start he would grab her by the hands and hold her. After he passed he looked back and watched them. The boy grabbed the girl and hugged and kissed her several times but she shoved him away.

"Then he turned her around and got her by the shoulders and shoved her down the road. There was a tool house 20 or 30 feet down there and he got her by the coat and hand and pulled her around behind this tool house. She was making some kind of noise. I ran back down there and said, "What's the matter?' She said, 'I am trying to get away.' I said, 'I will have the law on you in two minutes and a half,' and she went on up the road and he never said a word."

This was between 4:30 and 5 o'clock in the afternoon. Dillard Barnett came along. He saw the boy turn the girl around and push her down the railroad and pull her over the railroad embankment out of his sight. But they separated and she came back on the railroad. He did not hear anything that was said and did not see the boy otherwise have hold of the girl. Another witness testified to having seen them sitting at the tool house as he went by. At that time Hall and another man were standing at the overhead bridge. When the deputy sheriff had arrested the defendant on a bench warrant, he asked him, "What were you doing to her?" and he answered, "I was just 'saulting her a little."

Returning to the defendant's evidence. He insisted that he had not held the girl against her will or made any improper proposals to or motions toward her. He had no intention whatever of doing her harm. He admits having hold of her hands but denies having said that he was " 'saulting her." Hall did come up and threaten "to have the law on him," but when he inquired, "What have I done?" Hall made no response. There was some other evidence that the couple were sitting at the shelter or tool house laughing and talking, and that the place is by no means secluded.

The appellant insists he was entitled to a directed verdict of acquittal. We do not pass upon that question for the judgment must be reversed for the failure to give an instruction on assault and battery.

Under the second provision of Section 1158, the offense consists in taking or detaining a woman against her will with intent to have carnal knowledge of her, or that another shall have such illicit relation. There are, obviously, two essential elements to the crime: (1) The taking or detention against the woman's will, coupled with (2) the wrongful intent or purpose. Without both elements appearing there is no offense under the statute. There are many methods of taking or detaining a woman within the meaning of the statute, as has been held from time to time. Some of those methods do not involve any act which could be deemed an assault and battery, such as by putting the woman in fear by threats or a show of force thereby compelling her to stop or flee for safety, or otherwise impeding her progress. Section 589, Roberson's Kentucky Criminal Law. In such case, manifestly, there is no room for an assault and battery instruction. Likewise such an instruction need not be given where there was a laying on of hands or seizure of the person if the evidence proves that such act of assault could have been for no other purpose than to take or detain for the stated intention, and that the defendant was either guilty of the crime charged or of no offense at all. Of such class of cases are Brown v. Commonwealth, 188 Ky. 814, 224 S. W. 362, and Weiser v. Commonwealth, 201 Ky. 176, 256 S. W. 16. In the Brown Case it is said [page 363]: ''It therefore seems quite plain that there was no evidence heard by the jury which warranted the court in giving the instruction on assault and battery, though we can conceive cases in which such an instruction would be quite proper.'' The court held that under the peculiar circumstances an instruction on assault and battery and the definitions given, over the defendant's objection, constituted error.

Mere solicitation is not a crime under this statute. Woodward v. Commonwealth, 250 Ky. 393, 63 S. W. (2d) 477. Nor can a taking or detention without the denounced evil intent be such. But it is an assault and battery in such a case if there is a laying hold of the person of the woman. This conclusion finds support in the holding and reasons that it is a lesser degree of other offenses where a specified intent is a controlling factor and the evidence permits an inference or belief that it was absent. Thus, we have held an instruction on assault and battery was appropriate on a charge of assault with an intent to rob, a felony under Section

1160, Statutes. Little v. Commonwealth, 246 Ky. 805, 56 S. W. (2d) 526. Likewise of the crimes of malicious wounding with intent to kill, covered by Section 1166 of the Statutes, Caldwell v. Commonwealth, 265 Ky. 402, 96 S. W. (2d) 1041; and of attempted rape. Meade v. Commonwealth, 214 Ky. 88, 282 S. W. 781.

In the matter of deducing the intent the jury has a reasonably wide range from which to infer it. Nerren v. Commonwealth, 268 Ky. 715, 105 S. W. (2d) 838. We do not hold that there was no room for such an inference in the instant case, but we are of opinion that there was evidence from which the jury could have found that the essential intent was absent. The defendant had been able, according to the uncontradicted evidence, by his persuasion or suggestion to prevail upon the young lady not to leave him and go along with her friend with whom she expected to spend the night. Taking the prosecutrix's testimony, from which is absent any statement or suggestion of the accused indicating an evil intent and any act upon her part showing even a sense or belief that he had such an evil motive, the jury could have believed it was simply a case of assault and battery. As was pertinently said in Wilder v. Commonwealth, 81 Ky. 591, this statute (Section 1158), "while it is highly proper, may be perverted and used as a dangerous instrument of oppression or revenge" so that "the jury should be so instructed as to allow them to judge of the reality and criminality of the alleged detention."

Judgment reversed.