## Rose v. Commonwealth.

May 11, 1943.

280

Ward & Ward for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Appellant was charged with detaining Thelma Smith, against her will with intent to have carnal knowledge. Kentucky Statutes, section 1158, KRS 435.110. He was found guilty and in accordance with the verdict, sentenced to two years confinement in the penitentiary. Motion for a new trial, based on six or more grounds, was overruled. On appeal he sets out in support of his reasons for reversal three or more grounds, but we find it necessary to consider only such as challenge the indictment, and that appellant, under the proof, was entitled to a favorable directed verdict.

When the case was called counsel demurred to the indictment, ostensibly on the ground that what is called

the "accusatory" portion merely charged that accused had on a named date feloniously detained the prosecutrix against her will. The argument is that the accusatory part should clearly state the offense, and that the manner of its commission be clearly stated in the so-called descriptive portion. The court overruled the demurrer, and under the provision of the last clause of Chapter 142, Acts of 1942, amending section 126 of the Criminal Code of Practice, allowed the commonwealth's attorney to amend the indictment by interpolating the words "with intent to have carnal knowledge of her himself," this over the objection of appellant, though there followed neither demurrer nor motion to dismiss.

The section supra reads:

"The court may at any time cause the indictment to to amended in respect of any defect, imperfection or omission in the matter of form only."

Counsel for appellant contends that the amendment went to the substance. The commonwealth relies, not strongly, on the right to amend under the terms of the act, but further, and correctly, argues that the indictment is sufficient, since in what is called the descriptive portion there is contained the exact words omitted from the accusatory part, which are the words used in the statute.

There are to be found a number of older cases holding that the accusatory part should be full and complete in naming the offense, and that a failure was fatal, even though the descriptive portion clearly set out essential description, but we have in later days held that the indictment must be read as a whole, and if when so read it fairly and reasonably apprises the accused of the offense, and is complete in describing the acts constituting the offense, the indictment, if it otherwise complies with Criminal Code of Practice section 124, is sufficient. The recent case of Maggard v. Com., 287 Ky. 787, 155 S. W. (2d) 228, and cases cited, sufficiently answer the objection.

The other contention calls for a statement of facts. The proof showed that the alleged offense was committed in what is called the "Arcade," between High and Broadway Streets in Hazard. This is described as a passageway running through the Arcade building, between these streets, and is about 100 feet long and about 5½ feet in width. The proof shows that it is artificially

lighted and is used by the public in passing from one street to the other. There are entrances from the passageway to three or more business establishments, and at the time one to the Government's recruiting office. It appears to be a short cut from the Hazard Hospital to a drug store, from which the hospital purchased medical supplies.

The sister of prosecuting witness was at the time of the episode a patient of the hospital, and the witness, who lived in the country some distance from Hazard, had visited the sister on several occasions. On June 9, 1942, she was in town for this purpose. About 5:30 or 6 p. m., she started to the hospital through the Arcade. In doing so, as she relates, she met Rose not far from one or the other of the entrances, and when he was two or three feet from her he placed his hands on the sidewalls; she stopped, and "He asked me where I was going, and I replied 'I am on my way to the hospital'." Accused then asked her if she was "going out tonight." She replied that she was going to spend the night at her uncles, and added "I don't go out at night." He then said, "If you go out tonight I would like to take you to the Carnival." She said to him, "Do you know John Stidham; what kind of a boy is he?"

Evidently after this passage of words she went to the hospital, and later while appellant was mopping the floor, he said to her, "Here," and threw a note to her; she picked it up. The note read: "I want to see you tonite. I will meet you downstairs at ten o'clock." She gave the note to the Superintendent of Nurses, who called appellant into the sister's room, and the girl detailed the occurrence in the Arcade; the superintendent discharged appellant and reported the matter to the police.

Our conclusions make it unnecessary to detail appellant's testimony. Sufficient to say he admitted passing the girl in the Arcade, but said they were both going in the same direction; that she asked him, "Where are you going all dressed up?" and he replied that he was going to the Carnival. He admitted the note, but said that it was written the day following the incident in the Arcade. The nurse said that the girl had made the same statement when she gave her the note. Appellant then details certain actions or movements on the part of prosecutrix as indicated to him that a meeting would not

be objectionable. It was developed that appellant had also seen the girl and Stidham, "over about the depot."

We are satisfied, after reading the proof adduced, that the acts detailed did not constitute a violation of the statute under which the indictment was returned. In the first place it is quite improbable that if appellant had evil intentions he would have undertaken to consummate his purpose in a place so public as the one shown here. To constitute an offense under the statute there must have been both the detention against the will of the prosecutrix, accompanied by the intention of accused, to have carnal knowledge of her. Woodward v. Commonwealth, 250 Ky. 393, 63 S. W. (2d) 447. Mere solicitation is not a completed offense. We have held that to constitute a detention it is not essential that there be physical force. Jones v. Commonwealth, 121 Ky. 266, 89 S. W. 174. As we said in the recent case of Razor v. Commonwealth, 293 Ky. 704, 170 S. W. (2d) 10, mere solicitation of intercourse does not constitute a violation of the statute, and to render one guilty thereunder, such solicitation must be accompanied by interference with the free volition of the woman, restraining her from pursuing her own course. See Muncy v. Commonwealth, 274 Ky. 746, 120 S. W. (2d) 389.

Giving the proof latitude, there was a detention, but lack of showing of intention. Accepting the testimony of prosecutrix as true in every respect, appellant was only proposing to have her accompany him to the Carnival. Under the proof there was no offense within the meaning of the statute when she picked up the note he had thrown her in the hospital building. It is true that in order to show guilt, the proof in this class of cases the matter of deducing intent is allowed reasonably wide range. Nerren v. Commonwealth, 268 Ky. 715, 105 S. W. (2d) 838. However, on the authority of the cases cited, we are of the opinion that the Commonwealth failed to show facts necessary to constitute an offense under the statute, and the court should have sustained appellant's motion for a directed verdict. This conclusion makes it unnecessary to discuss other contentions, since we cannot foresee the course of proof on another trial. However, on the question of instruction criticized by counsel for appellant, attention is directed to the Muncy case, supra.

Judgment reversed for a new trial, upon which, if the proof is the same, the court will direct acquittal.