### Rooney v. Commonwealth.

April 16, 1946.

Wm. A. Hamm for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

Appellant was convicted on a charge of detaining a woman against her will with intent, etc., KRS 435.110, punishment being fixed at two years confinement. On appeal it is contended that the court erred (1) in refusing to grant a continuance; (2) in failing to give all applicable law; (3) in refusing to permit appellant the right to impeach the prosecuting witness; (4) in admitting incompetent evidence, and lastly that the proof was insufficient to uphold a verdict of guilt.

The prosecuting witness, Magdeline Mitchell, eighteen years of age, said she was unacquainted with appel-

lant until the night of September 7, 1945. On that night, around 9 o'clock she and her cousin were in front of Jones' Store in London. They left and went to another place to get coca-cola. Appellant came in and sat down with them and insisted on paying for the ''cokes''; they all left and walked back to Jones' Store. The prosecuting witness then started home, appellant following her. She turned out the side toward home, and appellant insisted on taking her home. She testified: ''He didn't say anything else until he got in front of James Combs, and he pulled me over to him and said, 'I have a dollar and a half, what about it?' '' She ''bawled him out,'' and told appellant ''I am going home, you had better go back,'' and he replied, '' 'No, I am going over there with you' and the faster I would walk the faster he would walk. The first thing I knew he grabbed me by the waist; threw me in the ditch and jumped in on top of me; I started wrestling and wrestled until I got out of breath; he had my arm bent up around my back. Finally I crawled up on the road, and he was still holding me, and I got on my feet; he grabbed me by the dress collar and dragged me into the ditch again; I was afraid no one would hear me holler. He tried to get his hand on my mouth. I finally hollered for Mr. Combs. Mr. Carpenter was in his car and he drove by but did not stop. By that time I broke loose and ran toward the car. I thought Mr. Combs was in it, but it went on. I took off running again and ran into Mr. Combs' yard, and Jack went running by and I asked Mr. Combs to catch him. Mr. Combs went down where I had wrestled with him, and I went to town and got out a warrant.''

Combs testified that about 9 or 9:30 on that particular night, he was in his front yard and heard a ''woman's voice scream, and then holler 'Mr. Combs.' I was watching, I knew it was a blind street. In a few minutes this girl popped up running fast as she could. A man came running after her, but turned into another street; the girl called out, 'Catch that fellow, he is trying to rape me.' '' Other witnesses corroborated Combs, and several testified as to the condition of the spot where the occurrence had taken place.

Appellant testified that he was eighteen years old, and had known the prosecuting witness for about four years. He admitted meeting the girls, and going into the restaurant and drinking coca-cola. Miss Mitchell had a

package and handed it to him at Jones' Store. They walked out Main Street and turned into the street going to her home, walking along talking, and the girl said, "Let's sit down," and they stepped over a ditch, sat down and he laid the package down. At this point "a light came on" and she jumped up and hollered and ran toward the Combs' home; "I got excited and ran out to Main Street." He admitted "I might have hugged her, but nothing was said about money." He denied that she at any time told him to go back or that there was any scuffling or wrestling in the ditch, and that he had any evil intent.

When the case was called for trial appellant moved for continuance on the ground that he had been indicted on the 13th of September, and his trial set, apparently without formal arraignment, for the 20th of the same month, not allowing him time for preparation. His attorney, employed on the 17th, stated in affidavit that he had not sufficient time in the interim to investigate and prepare for trial. Were it not for the fact that the judgment is to be reversed on another point we should give serious consideration to this ground for reversal. A like situation, as shown here, could not again exist.

The contention that the evidence was insufficient to support the verdict needs little comment. The prosecuting witness positively stated facts which led unerringly to the commission of the offense charged. Her testimony was corroborated, not as to the overt act, but as to circumstances which had a bearing. Appellant emphatically denied any reprehensible act, and declared that he had no evil intention. This clearly made an issue for the jury, whose province it is to give weight to the testimony.

The objection to incompetent testimony was to that of the arresting officer who went to the scene about thirty minutes after the alleged occurrence, and was shown the spot where it was said to have occurred. He testified as to the condition of the gravel road over which the girl said she had been dragged. While his testimony may have not been strictly evidential in the absence of a showing that there had been no change of the condition, we are of the opinion that it was not prejudicial.

The court correctly instructed the jury in the language of the statute, and as to reasonable doubt, followed by proper instructions defining technical terms. The contention, however, is that the court should have given an instruction on assault and battery, on the ground that the prosecuting witness testified that appellant twice grabbed her and threw her in the ditch. Counsel relies on the case of Muncy v. Commonwealth, 274 Ky. 746, 120 S. W. 2d 389, which, if we do as counsel did, select one paragraph of the opinion, would uphold his contention. In the first place appellant denied emphatically that he did anything more than hug the girl. He denied all charges or that he made any indecent proposal to the prosecuting witness. This was partially true in the Muncy case, where we held error in failing to give the assault and battery instruction under the evidence which showed no intent or evil purpose. We analyzed Section 1158, KS, pointing out the two elements of the offense, (1) taking and detaining, (2) the wrongful intent and purpose. We said [274 Ky. 746, 120 S. W. 2d 390]: "Some of those methods do not involve any act which could be deemed an assault and battery, such as putting in fear by threats or show of force thereby compelling her to stop or flee for safety * * *. In such case manifestly there is no room for an assault and battery instruction. Likewise, such an instruction need not be given where there was a laying on of hands or seizure of the person if the evidence proves that such assault could have been for no other purpose than to take or detain for the stated intention. Of such class of cases are Brown v. Com., 188 Ky. 814, 224 S. W. 362; Weiser v. Com., 201 Ky. 176, 256 S. W. 16." See also the recent case of Curtis v. Com., 295 Ky. 342, 174 S. W. 2d 522, 523, 524, in which we distinguished the Muncy case, and in answer to a like argument said: "The contention of appellant would carry weight, if it were not for the fact that there is no basis for the belief that the assault here claimed by prosecutrix was occasioned by any other motive or for any other purpose than the one charged. * * * His movements and words, his drawing her to him, and the scuffle, would indicate to any reasonably minded person that his purpose was other than the ordinary assault." There was no error in refusal of assault and battery instruction.

Mrs. Lamson was introduced by defendant, and after

stating that she knew the prosecuting witness was asked: "Tell the jury whether or not you are acquainted with her general reputation for morals from what the people who know her and with whom she associates generally say about her." The court sustained an objection, and the witness avowed that her answer would be that she knew her reputation and it was "bad, very bad." Counsel for Commonwealth admits that under Section 597, Civil Code of Practice (applicable in criminal trials, Hill v. Commonwealth, 191 Ky. 477, 230 S. W. 910; Swango v. Commonwealth, 298 Ky. 572, 183 S. W. 2d 523) the court should have permitted the answer to go to the jury, but suggests that the refusal did not serve to prejudice appellant's rights. In Louisville & N. R. Co. v. Scalf, 155 Ky. 273, 159 S. W. 804, 807, we held that evidence of general reputation of an adverse witness for immorality was competent, and that it was error to exclude it, notwithstanding such fact was proven by other witnesses. This case is cited with approval in the Hill case, supra. We think the appellant was entitled to have this testimony go to the jury under proper admonition, not as substantive evidence nor for the purpose of showing that appellant had the right to injure the prosecuting witness, "but because it was competent to impeach her credibility as a witness." Scalf case, supra.

For this error the judgment is reversed with directions to grant appellant a new trial consistent herewith.