## Hale v. Commonwealth.

(Decided June 22, 1934.)

FLOYD TAYLOR for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

·OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Homer Hale appeals from a judgment convicting him of manslaughter and fixing his punishment at 10 years' imprisonment.

The homicide occurred about 10 o'clock on the night of August 9, 1933, at the Evergreen Inn, which is located about two miles from Middlesboro. There were several guests present, some of whom were dancing, and others were seated on benches or standing around on the outside of the building. There are two entrances to the building, one in front and one in the rear. Shortly before the homicide, the deceased, Hiram Jones, went to the rear of the building in company with four or five girls. According to the witnesses for the commonwealth, Jones was standing near them with his arms folded when appellant came out the rear door of the building, and, drawing his pistol, said to Jones, "Drop your arms, I don't want to shoot you with your arms folded that way." Jones replied, "You would not shoot me this way, would you?" and dropped his arms without saying

anything or making any demonstration toward appellant. Whereupon appellant raised his gun and fired twice, one or both of the balls striking Jones. Jones then grabbed his stomach with his hands and started to run along the side of the building. Appellant ran after him and fired two more shots. Jones ran to the public road in front of the building, and fell mortally wounded. Appellant then surrendered himself and delivered his pistol to a deputy sheriff who happened to be present, and who testified that there had been four shots recently fired from the pistol.

On the other hand, appellant, after telling of a prior difficulty between him and Jones in which each had knocked the other down, and later on Jones had struck him in the head with a pistol, and also relating a conversation in which they had agreed to be friends, gave the following account of the homicide: When Hiram, who was talking to Joe Williams and Quince Patterson, went out of the building, appellant heard somebody call to him, and on looking to the back door Hiram motioned for him to come out. He then went out the back door and Hiram said, "I hear you are going to beat my damn eyes out." He replied, "It is not true, we made friends, and you stop listening to what people say." Hiram said, "God damn you, you talk about me too much," and went for his hip pocket. He then shot twice, and, as Hiram turned around, a bottle fell from his pocket and he missed his other two shots. He did not follow Hiram or shoot at him after he started to run.

On the calling of the case at Pineville, appellant asked that it be transferred to Middlesboro on the ground that the homicide occurred nearer to Middlesboro than to Pineville, and all the witnesses lived in that vicinity. The motion was overruled, and it is claimed that this was error. We find no merit in the contention. The statute authorizes the hearing of criminal and penal cases both at Pineville and Middlesboro, in Bell county, Acts 1926, c. 56, sec. 3, p. 170, and, though it is provided by another statute, section 963c-4, Ky. Stats., that all criminal cases shall be tried at the place nearest where the offense was committed, it must not be overlooked that the same statute, as was pointed out in the case of Turner v. Commonwealth, 227 Ky. 520, 13 S. W. (2d) 533 contains the proviso that, "if the court be

of the opinion that the ends of justice would be better subserved thereby, he may try any criminal case at either of said places, and it shall not be a ground of appeal or reversal that any such case was tried at one place when it should have been tried at the other.''

Complaint is made of the admission of certain evidence, and of the fact that the commonwealth's attorney was permitted to ask leading questions, and in support of this position we are referred generally to certain pages of the transcript of the evidence. We find no instance in which any evidence was improperly admitted. Perhaps in a few instances the questions were somewhat leading, but, as the questions in one or two instances were asked for the purpose of elucidating something to which the witnesses had already testified, and in other instances the answers were in the negative, it is clear that appellant was in no wise prejudiced by the form of the questions.

Another insistence is that the court erred in not permitting appellant's counsel to ask leading questions of the commonwealth witnesses. The only instance of this kind occurred during the examination of the witness, John Wilson, who, after indicating how fast the shots were fired, was asked and answered the following questions:

"Q. They all sound about the same? A. Yes, sir.

"Q. And as if they came from the same place? A. No.

"Judge: That is leading.''

Appellant was endeavoring to support his own version of the affair by showing that the shots came from the same place. The answer ''No'' was unfavorable to him, and, even if the statement of the judge, ''That is leading,'' had the effect of excluding the answer, the ruling was favorable to appellant and not prejudicial.

Appellant asked a continuance on account of the absence of Hiram Sizemore, and filed an affidavit as to what Sizemore would testify to if present. When the affidavit was read, the court gave the jury the following instruction:

"That is permitted to go to you as the statement of the witness, that Hiram Sizemore would testify to if the witness was here and sworn.''

The argument is that the court should have stated that the statement was true, and that the jury should give it as much weight as if the witness were present in person and testified. Under the present Criminal Code, the attorney for the commonwealth is not compelled, in order to prevent a continuance, to admit the truth of the matter which it is alleged in the affidavit the absent witness would prove, but only that such witness would, if present, testify as alleged in the affidavit. It is further provided, however, that the court may, when from the nature of the case it shall be of the opinion that the ends of justice require it, grant a continuance, unless the attorney for the commonwealth will admit the truth of the matter, which it is alleged in the affidavit the absent witness would testify to. Criminal Code of Practice, sec. 189. Not only did the facts fall far short of showing any abuse of discretion on the part of the trial court in refusing to permit the affidavit to be read as true, but we find that, when the affidavit was introduced, it was agreed by counsel for the commonwealth and the defendant that the affidavit might be filed and read to the jury subject to competency and relevancy. In view of this situation, the admonition of the court went far enough, and it was not error not to tell the jury that the affidavit was true.

In his closing argument to the jury, the commonwealth's attorney used the following language:

"Verlie Saylor was up there at the place where this happened on the mountain, and the motive for shooting Hiram Jones is that the defendant was jealous of him and this girl."

It is insisted that the argument was improper, in that it was not based on any facts proven before the jury. There was evidence that Verlie Saylor knew Hiram Jones and saw him on the evening he was killed, that on being told that appellant was at the Evergreen Inn she refused to go, and that prior to that time she and appellant went together. The commonwealth's attorney had the right, of course, to draw his own conclusions from the evidence, and we are not prepared to say that he went outside the record in stating that appellant was jealous of Hiram and Verlie Salyor. But, aside from this, the homicide was admitted, and the case turns on what ocurred at the time. According to the witnesses

for the commonwealth, appellant shot the deceased, who carried no weapon, and was making no demonstration toward appellant. On the other hand, appellant claims that the deceased went for his hip pocket. The jury gave appellant the benefit of the doubt and found him guilty of manslaughter. In the circumstances, it is not perceived how the statement of the commonwealth's attorney that appellant was jealous of deceased and Verlie Saylor, even if not supported by the evidence, was prejudicial to appellant's substantial rights.

Judgment affirmed.