## Toler v. Commonwealth.

June 18, 1943.

Marcus C. Redwine and John D. Alkinson for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The appellant, Shelby Toler, while waiting the preparation of a sandwich, sat with some other young people in a restaurant in the village of Clay City, Powell County, where he lived. Verlin Goodwin, a stranger, drunk, caparisoned with a .38 pistol in a holster, came

in, brushed against Toler and said: "My number is number 9." All agree that he was in an angry mood. As one witness expressed it, he was "green mad." It appears that he had recently come from a crap game where he had lost. Toler responded, in good humor: "Mine is number 11." Goodwin then proceeded to pick a fight with him. In this bantering the defendant observed: "I cut my teeth on a gun," to which Goodwin responded: "But you can't digest bullets." Toler pulled off his coat and told Goodwin to take off his pistol and he would fight him or that he could lick him. The language of each toward the other was neither complimentary nor appeasing. The proprietor of the restaurant ordered Goodwin out. The defendant testified: "I told him I could give him anything he wanted and he turned and walked toward the door." As he went out he again cursed Toler, using fighting language, and dared or invited him outside. Toler accommodated him. Who struck the first blow is a point upon which the witnesses differ, although the better evidence, it seems to us, is that it was Goodwin. There was a violent struggle in which both boys went down. According to the witnesses for the Commonwealth Toler got on top, reached under Goodwin, who was face down, wrested his pistol from him and deliberately shot him in the back. According to the defendant and his witnesses Goodwin had drawn his pistol and while both boys were struggling on the ground on their knees, Toler caught hold of his wrist and twisted his arm around to his back when the pistol was discharged. The bullet entered the center of his back between the shoulder blades. It did not come out and its range within the body is not disclosed. The defendant insists that he never had his hand on the weapon. He frankly admits on the witness stand that he had accepted Goodwin's invitation to fight and had gone outside for that purpose. Goodwin died immediately. Toler was convicted of manslaughter and sentenced to four years' imprisonment. He was then 20 years old and it appears the deceased was about the same age.

The argument that the verdict is contrary to the evidence cannot be sustained. We appreciate that the situation was such that no red-blooded boy would have done otherwise than accept the challenge of a bully who provoked the fight. Yet of necessity the law does not countenance such action and holds that where one vol-

untarily enters an actual combat or, as it is called, a mutual affray, with the intention of each participant to kill the other or do him great bodily harm, and that results, neither is entitled to go acquit on the ground of self-defense. Taylor v. Commonwealth, 281 Ky. 442, 136 S. W. (2d) 544. In a situation such as was developed here, one must recognize the truth of Falstaff's declaration:

> "The better part of valor is discretion, in the which better part I have saved my life."

We can but admire his courage and wish that it might have been saved for exercise as a soldier in meeting the enemies of our country.

The homicide occurred in the early evening of October 24, 1942. The indictment was returned November 16th and the case set for trial on the 19th. Upon the defendant's motion for a continuance it was passed until the 24th. He renewed his motion at that time and it was overruled. The ruling is relied upon as a reversible error.

The defendant's affidavit in support of his motion for a continuance set forth that four eye-witnesses were absent in the Army. Elwood Sowers, one of the young men with whom Toler was sitting when the deceased began the difficulty in the restaurant, and who had accompanied the defendant outside, had returned to Powell County from Lexington on November 20th and was served with a subpoena. He made an affidavit on that day reciting the fact that he had informed the sheriff that he had received orders to report at once to Ft. Hayes, Ohio, and then at Camp Crowder, Missouri, not later than the morning of the 24th and that he could not obey the subpoena. Sowers had previously made an affidavit relating in detail what he had seen and heard. The defendant's affidavit stated what the other absent witnesses would testify if present. He alleged that if given an opportunity by a continuance until the next term of court, these young soldiers could obtain furloughs and be present.

In overruling the motion for a continuance, the court ordered that these affidavits be read as the depositions of the witnesses and that was done. The appellant earnestly argues that the just and proper effect was not and could not be had by presenting evidence so vital

to his defense in this manner, and invokes the proposition that the personal presence and oral testimony of these witnesses would have been much more effective; indeed, that the effect of their personality would have changed the verdict to one of acquittal. He points out that only a month had elapsed since the homicide; that this was the appearance term of court and he had been indicted only a week before; that a continuance to the March Term should have been granted. The county attorney filed an affidavit questioning the ability of the defendant to procure the presence of these witnesses at any other term of court, and pointed out that important witnesses for the Commonwealth would probably be in the Army by the March Term and that neither their oral testimony or depositions would be available.

The procedure in situations like that presented here is prescribed by Section 189 of the Criminal Code of Practice. Its exercise with respect to granting a continuance rests in a large degree within the sound discretion of the trial court and his action will not be disturbed except where it is clearly shown that there has been an abuse of discretion. Lawson v. Commonwealth, 278 Ky. 1, 172 S. W. (2d) 876. Sometimes the justice of his action in denying a continuance may be measured in the light of developments in the course of the trial. Johnston v. Commonwealth, 276 Ky. 615, 124 S. W. (2d) 1035.

We think, as doubtless the trial court thought, that it was more probable that these boys in the Army would not be able to attend court within a reasonable period than that they would be able to do so. The testimony of absent witnesses other than Sowers was wholly cumulative and there was very little in Sowers' statement that was not covered by the defendant and witnesses who testified in person. The defendant had the advantage of a detailed, ex parte statement by Sowers and avoided the possibility of his cross examination which might have weakened it in some particulars. In any event, assuming the defendant could have procured their attendance at another time, which is problematical, the question is narrowed to the point of whether having them personally testify would probably have been so much more effective that in denying it the court abused his judicial discretion and that such ruling amounted to a prejudicial error. We do not think the court abused his discretion.

110

The appellant further maintains that if the adverse ruling on his motion for a continuance be found to have been proper, that it was error in the court not to have sustained his further motion to require the Commonwealth to admit the testimony of the absent witnesses to be the truth. Prior to 1920, Section 189 of the Criminal Code of Practice provided that where a defendant's motion for continuance on the ground of absent witnesses was made at the same term at which the indictment was found the Commonwealth must have admitted the statements of fact contained in his affidavit to be true in order to avoid a continuance. The reason ascribed for this was that the accused is entitled, under the Constitution, "to have compulsory process for obtaining witnesses in his favor," Section 11, and that it was generally difficult for him to avail himself of this right by obtaining the presence of his witnesses in the trial if held so soon after his indictment. So the Commonwealth could not force him into trial at the indictment term where his witnesses were absent through no fault of his own unless it admitted the facts stated in the affidavit to be true. Owing to its conclusiveness in his favor, it admitting of no contradiction or explanation whatever, he could not complain if tried then. Hardesty v. Commonwealth, 88 Ky. 537, 11 S. W. 589. In 1920, the Legislature, probably recognizing the advancement of means of communication and transportation, eliminated the provision and left the matter to the discretion of the trial court, who may require the admission of the truth of the statements "when, from the nature of the case, it shall be of opinion that the ends of justice require it." Only an unusual situation or a statement relatively unimportant would seem to require this concession. Cf. Sherrill v. Commonwealth, 290 Ky. 386, 161 S. W. (2d) 615. To have admitted the truth of the statements in the case at bar would have been close to requiring the conclusive concession by the Commonwealth that the homicide was excusable. Obviously, the conclusion we have reached that there was no abuse of discretion in overruling the defendant's motion for a continuance and permitting him to read the affidavits as the depositions of the absent witnesses decides this point adversely to the appellant.

In rebuttal, the Commonwealth introduced evidence to show that two of the absent witnesses whose depositions had been read were somewhere else on this occasion and did not see anything which the affidavit stated they

saw. The appellant would have us apply the construction of Section 189 of the Criminal Code of Practice that it prohibits the Commonwealth from introducing testimony to show that an absent witness had made a statement contradictory of that contained in the affidavit read as his deposition. Rose v. Commonwealth, 286 Ky. 53, 149 S. W. (2d) 772. The reason for that construction is that no foundation has been or could be laid for the introduction of such impeaching testimony by first inquiring of the witness whether he had made the alleged contradictory statement as is required by Section 598 of the Civil Code of Practice, which is applicable in the trial of a criminal prosecution. Section 189 of the Criminal Code of Practice permits the Commonwealth to contradict statements of an absent witness by other evidence "and to impeach such absent witness or witnesses to the same extent as if he were personally present." In order to show that the witness was not present, as he is presumed to have deposed, it is not required that he be asked about it as the basis of proving he was not there. So the reason for the rule in respect to contradictory statements is absent and the reason failing, the rule is inapplicable.

Being of opinion that the appellant had a fair trial, we must affirm the judgment.

Judgment affirmed.