## Hambrick v. Commonwealth.

Jan. 30, 1945.

654

A. J. Slaughter and James E. Quill for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HARRIS—Affirming.

The appellant was convicted and sentenced to death under an indictment charging him with aiding and abetting Carl Fox in the perpetration of a rape upon Miss Myrtle Barnes.

On the night of August 22-23, 1943, Miss Barnes, who was 16 years of age at the time, was in company

with her young gentleman friend, Stanley Fryman, in one of the city parks at Newport, when the following occurred, according to her testimony:

"Q. While you were sitting there talking, what happened, if anything? A. There were four colored men came across the road and came to the bench where we were sitting—it had a tree behind it. They walked behind the tree and came up in front of us and one of them asked Stanley for a match. He told him he didn't have a match; and then he got up to see if he did have a match, and they pushed him back into the seat and told him he wasn't going anywhere. I started to run. * * *

"Q. Do you know who any of the members of that band of four colored men were? A. I didn't know then, but I do now.

"Q. Who were they, as you know them now? A. Carl Fox, Ed Hambrick, Stutson, and McCall.

"Q. Do you see one of that four in the court room now? A. Sure.

"Q. Point him out to the jury. A. Over there (indicating the defendant Hambrick). * * *

"Q. After you ran, tell the jury what happened. A. They was three of them. They came after me. They got me and drug me over in the weeds on the bank of the river.

"Q. Do you know whether or not the defendant was one of the three that caught you? A. He was.

"Q. After they dragged you over the bank into the weeds, tell the jury what happened. A. They hit me in the face with their fists several times. They cut off my panties. That one over there got on top of me—

"Q. And after that? A. (No answer).

"Q. I withdraw the question. When you refer to 'that one,' whom do you mean? A.—Hambrick.

"Q. While Hambrick was on you, what was Fox doing? A. Holding me.

"Q. What if anything was he doing beside that? A. Trying to put his penis in my mouth; sucking my breast; kissing me.

"Q. Did he say anything to you? A. Told me to shut up or he would cut my damn head off.

"Q. Did either of them have a weapon? A. A knife.

"Q. After Hambrick got off you, what happened? A. He held me, and Fox got on me. * * *

"Q. I want you to be more specific when you say that—'got on me.' I want you to tell the jury what transpired. A. Both of them had intercourse with me.

"Q. Both of them? A. Yes.

"Q. What was Hambrick doing while Fox was having intercourse with you? A. Holding me. * * *

"Q. Tell the jury what you understand by 'intercourse.' A. He put his sex organ in my vagina. That is what I mean by 'intercourse.' * * *

"Q. Will you state whether or not, while Fox was having intercourse with you, he effected a penetration with his sex organ. A. Yes, sir."

The testimony of Miss Barnes is corroborated in its general aspects and in most of its details by young Fryman and by the officers. The testimony which these witnesses gave on the trial of this case is substantially the same as that given by them on Fox's trial, and the reader is referred to the opinion in that case, which we are delivering simultaneously herewith.

Upon this appeal the appellant presents and argues four points: (1) Double jeopardy; (2) the admission of evidence; (3) the instructions; (4) the verdict. We shall consider each in its order.

First. The appellant was first indicted and tried on a charge of having raped Miss Barnes himself. Upon his trial under that indictment he was convicted and sentenced to 20 years' confinement in the penitentiary. Being disappointed over that verdict, the commonwealth's attorney procured the indictment under which the appellant was tried and convicted in the present case. Counsel's argument that this constitutes double jeopardy is not supported by any cited authority, either domestic or foreign, and is completely refuted by this court's opinion in Wingfield v. Commonwealth, 197 Ky. 331, 246 S. W. 822. The distinction which counsel seek to make between former trial and conviction and former trial and acquittal is ingenious but not sound.

Second. Upon the trial of the present case the same witnesses testified on behalf of the Commonwealth that

testified in its behalf on appellant's first trial, and their testimony was substantially the same upon each occasion. It is appellant's argument: (a) That the opinion in the Wingfield case, supra, is erroneous and should be corrected; (b) that with the opinion in that case corrected, the evidence offered on appellant's last trial, insofar as it was substantially the same as that introduced on his former trial, would be incompetent and prejudicial. No authority is offered which supports his position, and we do not hesitate to reject his argument.

Third. The appellant claims that (a) the court should have given an instruction on an attempted rape, and (b) that the court should not have refused his request limiting the effect which the jury might give to the evidence concerning his conviction on his first trial.

(a)  When she first testified before the grand jury Miss Barnes made certain statements from which, in the absence of explanation, it might be implied or argued that Fox did not consummate his purpose, but only attempted to do so.  Upon the trial of the present case counsel for appellant asked her if she did not make those statements before the grand jury, and she answered in the affirmative. From this counsel argue that appellant was entitled to an instruction on attempted rape.  Counsel's argument overlooks a vital circumstance; namely, those questions and answers were not competent as substantive evidence but only for the purpose of contradiction. So far as her substantive evidence upon the trial is concerned, it was all one way: he did rape her; there was a penetration. The substance and effect of appellant's testimony was that no rape was committed by either himself or by Fox and that no attempt to do so was made by either of them. In short, it was either rape or nothing. There was no evidence on which to predicate an instruction on attempted rape.

(b)  We are not sure that we comprehend counsel's argument.  If they mean that on the last trial the Commonwealth undertook to introduce evidence to show that the appellant was convicted on his first trial, they are in error. The Commonwealth did not undertake to show, and the record does not contain any evidence showing, that the appellant was convicted on his first trial. If they mean that the Commonwealth had no right to introduce on the last trial any evidence that was substantially the same as that on the first trial, they are likewise in

error. By denying appellant's plea of double jeopardy we have held that the crime alleged in the second indictment is a separate and distinct crime from that alleged in the first indictment. This being so, similarity in the evidence given on the two trials becomes immaterial.

Fourth. *Verdict Against the Law and the Evidence.* Under this caption it is argued: (a) That the testimony of Sol Youtsey, the superintendent at the hospital, does not reveal any evidence of a penetration; (b) that there was no evidence of an indictment of the principal, Fox, or of his commission of the crime; (c) that appellant's motion for a continuance should have been sustained; (d) that the commonwealth's attorney was guilty of misconduct in his interrogation of appellant on cross-examination; (e) that the form of the verdict was erroneous and indicated passion and prejudice.

(a) The answer is that the witness did not testify that there was not a penetration. He did not testify one way or the other with respect thereto.

(b) Miss Barnes' testimony constituted ample evidence of Fox's commission of the crime, and evidence of his indictment was unnecessary. Roberson's Criminal Law, second edition, 193 et seq. Reed v. Commonwealth, 125 Ky. 126, 100 S. W. 856, 30 Ky. Law Rep. 1212.

(c) On April 18 counsel for appellant moved for a continuance of thirty days to enable them to prepare the case and to obtain a transcript of the record of appellant's former trial so that they might file and use the same in support of their client's plea of former jeopardy. The court denied their motion for a thirty days' continuance but did postpone the trial for two days. There was also entered a stipulation which gave the appellant the right to file on a later date a complete transcript of the record of his former trial. We are of the opinion that this alleged error on the part of the court was not serious and evidently counsel were of the same opinion, since they did not mention it in their motion and grounds for a new trial, which they were required to do to make the question reviewable here.

(d) The commonwealth's attorney did propound some questions that were improper, but in each instance the court promptly sustained the appellant's objections, and this, we think, neutralized any prejudicial effect that the propounding of those questions might otherwise have had.

(e)   The bill of exceptions shows that in the jury's effort to return a proper verdict the following occurred:

"The Court: Ladies and Gentlemen of the Jury, you have returned a verdict in this case in the following language: 'We, the jurors, find the defendant Ed Hambrick guilty of rape and fix his punishment at death.'

"The Court says this to the jury—the indictment in this case does not accuse the defendant, Ed Hambrick of the crime of rape—it charges the defendant with the crime of 'aiding and abetting one Carl Fox in the commission of the crime of rape committed on the body of the prosecutrix, Myrtle Barnes.'

"Therefore I am going to send the jury back into the jury room so that the jury may, in arriving at a verdict, use such language as constitutes a finding of guilty or not guilty based upon the charge contained in the indictment.

"Mr. Quill: Your honor, May I be heard?

"The Court: Yes, you may be heard; but no arguments.

"Mr. Quill:   The verdict has been received, read by the Clerk, and the jury has been polled. I now move that the jury be discharged.

"Mr. Wise:   The Commonwealth opposes the motion for the reason that there is no ground—

"Mr. Quill: Your Honor said 'no argument.'

"The Court:   This verdict has not been entered. Therefore I hold that any discrepancy or inaccuracy appearing in the verdict is still subject to correction by the jury.

"Mr. Quill:   The defendant excepts, on the ground that the jury has returned the verdict; the defendant now moves that this verdict be not received, and renews his motion that the jury be discharged.

"The Court: Overruled.

"Mr. Quill: Exception.

"The Court:   Ladies and gentlemen of the jury, of course you must not be abashed about this.   Everybody suffers some confusion—this is not an ordinary thing we do every day,—this trying a case and returning a ver-

dict. The Court is fully cognizant of the fact that the juries are composed of laymen, and even lawyers make mistakes.

"The verdict you have returned after the Court sent you back to your jury room to correct the verdict that was read by the clerk is in this language:

" 'We the jury find the defendant Ed Hambrick guilty of aiding, abetting and assisting one Carl Fox in said crime upon the body of Myrtle Barnes, and fix the punishment at death.'

"The verdict is complete, except that you do not specify the crime; you just say 'in said crime upon the body.' Now, I suggest that the jury go back and correct the verdict. If this is your verdict, and you mean by 'the crime' the crime of rape, then you insert that in your verdict, and amend the verdict in that respect. Do you understand that, ladies and gentlemen of the jury?

"(The jury signifies it understands).

"The Court: Very well, retire.

"Mr. Quill: I move the jury be discharged.

"The Court: Motion overruled.

"Mr. Quill: I except.

"(The jury returns to the Court Room).

"The Court: Read the verdict, Mr. Clerk.

"Mr. Quill: Note my objection to its being received.

"The Court: Let it be noted that the verdict returned by the jury is received, and the defendant objects. The clerk is now ordered to read the verdict returned by the jury.

"The Clerk thereupon read the following verdict:

"We the jury find the defendant, Edward Hambrick guilty of aiding and abetting and assisting one Carl Fox in said crime of rape upon the body of one Myrtle Barnes, and fix the penalty at death.

"(Signed) Harry C. Ahlbrand,
Foreman."

We do not perceive in the confusion which attended the return of the jury's verdict any factor or circum-

stance violative of appellant's rights. It is obvious that the verdict as finally worded truly reflected the jury's original finding and conviction, both as to appellant's guilt and punishment. And as for the conduct of the trial judge, he handled an awkward and delicate situation with tact, fairness and discretion.

A thorough consideration of the entire record has convinced us that the appellant has had a fair trial and that the evidence amply supports the jury's verdict.

Judgment affirmed.

Whole Court sitting.