## KNUCKLES v. COMMONWEALTH.

Court of Appeals of Kentucky.

Oct. 23, 1953.

J. B. Johnson, J. K. Beasley, Harlan, for appellant.

Hon. J. D. Buckman, Jr., Atty. Gen., Walter C. Herdman, Asst. Atty. Gen., for appellee.

STEWART, Justice.

Lowell Knuckles was jointly indicted with Willis Bryant for the crime of assault with intent to rob by the use of an offensive weapon, a crime denounced by KRS 433.150. A severance having been granted by the Harlan Circuit Court, the Commonwealth elected to try Knuckles. The case was heard and the jury returned a verdict of guilty, fixing his punishment at confinement in the penitentiary for a period of twenty-one years.

Knuckles appeals from the judgment, urging these grounds for reversal: (a) That the overruling of his demurrer to the indictment was error; (b) that an abuse of discretion was committed by the refusal to grant a continuance; (c) that his motion to require the Commonwealth to admit as true the evidence in the affidavits of the absent witnesses should have been sustained; (d) that the verdict is not supported by the evidence; (e) that the remarks of the Commonwealth's attorney in the closing argument were prejudicial; (f) and that the instructions failed to give the whole law of the case. These grounds will be considered in the order stated.

At the outset it is insisted the indictment is fatally defective (a) because the Commonwealth failed to allege in the accusatory part that the offense was committed "unlawfully and maliciously" and (b) because it sets forth two separate offenses and is therefore duplicitous. While it is true, as claimed, that the accusatory part of the indictment does not employ the statutory language, "unlawfully and maliciously", the descriptive part does, so that, reading the indictment as a whole, it meets the requisites of the statute. In an early line of cases this Court adopted the practice of considering the accusatory and descriptive parts of the indictment as independent entities and of requiring each to be full and complete in naming the offense charged,

and of voiding the indictment upon a failure to do such, but, beginning with the case of Maggard v. Commonwealth, 287 Ky. 787, 155 S.W.2d 228, the general rule was adopted, and has since been adhered to, that the indictment must be read and considered as a whole and if, when so read and considered, it fairly and reasonably apprises the accused of the offense and it substantially complies with Section 124 of the Criminal Code of Practice in respect to the matters therein specified as material and necessary, it will be a good indictment. See Rose v. Commonwealth, 294 Ky. 279, 171 S.W.2d 435. Riley v. Commonwealth, 278 Ky. 732, 129 S.W.2d 581, 582, is cited by appellant as being directly in point on the question raised; however, a casual reading of this opinion will reveal that such is not the case, for the reason that the indictment failed to set forth that the offense was committed "unlawfully and maliciously" in either the accusatory or the descriptive part.

■ It is argued, too, that the indictment is defective as duplicitous for the reason that it charges two distinct offenses under KRS 433.150. In Chappell v. Commonwealth, 200 Ky. 429, 255 S.W. 90, relied upon by appellant as controlling on this issue, this Court held that KRS 433.150 does, in fact, state two separate offenses and that an indictment charging a person with the commission of both offenses would be void for duplicity. Still, in the later case of Hannah v. Commonwealth, 242 Ky. 220, 46 S.W.2d 121, 124, after admitting we had fallen into error in our previous construction of this particular statute, we reinterpreted it in the following light: "A careful reading of this section discloses that it does not describe or contain two distinct offenses, but describes one specific offense which, however, may be committed in two different ways. This being true, it follows that an indictment charging that it was committed in either or both of the ways would be good. * * *" We have not departed from the rule laid down in the Hannah case. See Simmons v. Commonwealth, 263 Ky. 171, 92 S.W.2d 68; Little v. Commonwealth, 246 Ky. 805, 56 S.W.2d 526.

Based upon the conclusion we have reached from the foregoing line of reasoning we hold that appellant's demurrer to the indictment was properly overruled.

Next, appellant maintains that the trial court should have granted a continuance. The accused was arrested on January 6, 1952, and indicted the following day. On January 8th he obtained counsel. The trial was set for one week later. To support his motion for a continuance, he filed affidavits to the effect that three absent witnesses would testify if they were present that he was in Pineville at the time the crime was committed in Harlan. At the most, this evidence would have been merely cumulative. Other witnesses of appellant testified to the same facts embraced in the affidavits. Aside from this, the lower court allowed the affidavits to be read as the depositions of these absent witnesses, subject to the relevancy and competency of the statements contained therein.

■ The granting of a continuance in a criminal case has long been left to the sound discretion of the trial court. Only in instances of plain abuse, where, for example, established rules of practice and the accused's fundamental rights are disregarded, will the exercise of such discretion be overruled by this Court. See Sherrill v. Commonwealth, 290 Ky. 386, 161 S.W.2d 615; Toler v. Commonwealth, 295 Ky. 105, 173 S.W.2d 822; Jeter v. Commonwealth, 268 Ky. 285, 104 S.W.2d 979. It is patent that the trial court has indulged in no abuse of discretion where the testimony of the absent witnesses is merely cumulative and especially where the court permitted the affidavits to be read at the trial.

■ But appellant contends that the Commonwealth, pursuant to Section 189 of the Criminal Code of Practice, should have been required to admit as true the statements set forth in the above affidavits. We can quickly answer this argument by pointing out that the foregoing Code provision was amended in 1920 with the result that the Commonwealth is no longer compelled

to accept as the truth the matter alleged in the affidavit that such absent witness would prove if present when a continuance based thereon is not granted. It now lies within the discretion of the judge to allow or disallow an affidavit to be read as true. Accordingly, the procedure followed in the case at bar was entirely proper. See Hale v. Commonwealth, 255 Ky. 167, 73 S.W.2d 34; Ragland v. Commonwealth, 204 Ky. 598, 265 S.W. 15.

■ We are urged to reverse the judgment because the verdict is not sustained by the evidence. In this connection it is insisted that Knuckles was never sufficiently identified so as to establish his guilt. This required an examination of the evidence.

The alleged robbery took place at about 6:00 p. m., Friday, December 19, 1952, in the home of Mr. and Mrs. Allen Hensley on Poor Fork River, near Harlan. Hensley, age 79, testified that he and his wife had just begun to eat supper when a short, heavy-set man dressed in dull-colored coveralls knocked at the front door. This man told Hensley, who went to the door, that he was cold and gained admittance to the house under this pretext. He immediately seized the old man, tied him in a chair and demanded his—Hensley's—money. At first the intruder displayed no weapon, but, almost immediately thereafter, he produced and brandished a pistol and threatened to kill Hensley unless he turned over all the money in the house. In a short time two other men entered the room to aid in the robbery. Meanwhile, the first culprit, apparently the leader, had taken $232 from Hensley's pockets. Further unsuccessful attempts were made to find money in the room, including an effort to open a 1200-pound safe. Finally, the men fled.

Appellant makes much of the fact that when he, Bryant and another man were taken to Hensley's by officers for the purpose of identification, Hensley could not say he perpetrated the deed. Later, however, when appellant donned clothes similar to those used by the robbers, Hensley definitely identified him as the leader. At the trial Hensley on several occasions positively stated the accused was the first to enter his home. He was corroborated in every respect by the testimony of his 74-year-old wife.

But, appellant's identity was further established by the testimony of Odie Adkins, who was hunting in the late afternoon on the same date at a place called Rebel Rock which is located close by the Hensley home. According to Adkins, he observed a car approaching him on a road while he was walking parallel to it on a nearby gravel path, and thinking he might be discovered by a game warden because he was violating the law by hunting out of season, he hid behind a large rock. Three men soon drove up in a 1941 Ford, got out within 15 or 20 feet of his place of concealment, and, unaware of his presence, started putting coveralls over their clothes. Adkins said he heard them discuss robbing someone, but he could not make out names. He saw one of the men through a slit in the rock, whom he positively identified as Knuckles. As the men departed, Adkins followed them in his car he had parked near by and he saw them enter the Hensley house. He stopped alongside the Ford. With a flashlight he examined it and memorized the license number which he wrote down ten or fifteen minutes later. Then he went for help. By the time he returned the men had completed their mischief and fled. Adkins fixed the time of the robbery as just after dark. He later identified a 1941 Ford sedan as the car used by the thieves by the license number and by certain defects he had noted on its body, which the owner, Stevie Edmonds, admitted loaning appellant to transport a load of whiskey.

Appellant and Bryant denied they were anywhere near Harlan at 6:30 p. m. on December 19th. They admitted Edmonds left his 1941 Ford parked on a street in Harlan so that appellant might use it for a trip to Pineville to get a load of whiskey for Edmonds. However, they insist they left Harlan in appellant's car on the occasion in question, after picking up a girl at 5:00 p. m., and then drove to Pineville. They remember little about this girl except that her Christian name was Barbara. Her affidavit

was one of the three read on behalf of appellant. Allegedly, these two men remained in Pineville until about 9:00 p. m., when Knuckles claimed he called Edmonds' wife. In the meantime, they had conversed with a waitress named Ella Wilson and Bryant had talked to a man named Floyd Karloftio, so their evidence goes. The affidavits of these two persons were likewise read at the trial.

. On cross-examination, Knuckles admitted he did not pick up the whiskey in Pineville, nor did he know the name of the man he was to contact at the latter city, giving as an excuse that the man he sought would somehow recognize him. At one point he admitted being at Rebel Rock with fatigue clothes on, where Adkins testified he saw him, and then he immediately denied this on redirect examination. It would be useless to go into the testimony in further detail. We have little difficulty in concluding that ample evidence was introduced by the Commonwealth to uphold the verdict. The jury chose to disbelieve appellant's story, and it is not within our province to say they were wrong.

■ It is next asserted that certain remarks made by the Commonwealth's attorney in his final argument, although objections were sustained to such, tended to prejudice the minds of the jury against the accused and, as a consequence, a reversal is justified. We feel it will suffice, without quoting the statements to which objections were made, to point out that the trial court, upon being requested so to do, admonished the jury in language calculated to allay any damage done. Nor do we, after carefully reading the statements, consider them so prejudicial that an admonishment could not render them harmless. See Hambrick v. Commonwealth, 299 Ky. 653, 186 S.W.2d 628; Long v. Commonwealth, 288 Ky. 83, 155 S.W.2d 246.

■ In the last assignment of error, a twofold objection is raised to the instructions. First, it is argued that since the indictment omitted the words "unlawfully and maliciously," it was error to instruct, as the court did, upon a felony; and, second, if

appellant is wrong in this contention, then the evidence warranted an instruction only on the lower degree of felony set forth in KRS 433.150, that is, robbery by demanding money, goods, etc., in a forcible, violent manner, whereas only an instruction on robbery by an unlawful, malicious assault with an offensive weapon was given.

The first objection is based upon the erroneous assumption that the indictment is defective and, in consequence, charges only a misdemeanor, but we have shown heretofore that the indictment is good and accuses appellant of a felony. Our answer to the second alleged error is that the evidence in the statement of facts outlined above clearly indicates that Hensley was robbed at the point of a pistol, notwithstanding appellant's theory to the contrary. To sum up, "Instruction No. 1" follows the language of the indictment, the proof supports it and it also conforms substantially to the model approved in Section 959(2) on page 1272 of Stanley's Instructions to Juries.

Wherefore, the judgment is affirmed.