**N.L., a Child Under Eighteen,
Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

No. 2007–CA–001216–DG.

Court of Appeals of Kentucky.

Aug. 14, 2009.

Timothy G. Arnold, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for Appellant.

Christopher S. Nordloh, Assistant Kenton County Attorney, Covington, KY, for Appellee.

Before KELLER and WINE, Judges; LAMBERT,[1] Senior Judge.

## OPINION

LAMBERT, Senior Judge.

N.L., a child under eighteen, appeals from an opinion and order of the Kenton Circuit Court that affirmed the Kenton District Court's judgment that he was a juvenile sexual offender. This court granted N.L.'s motion for discretionary review. Upon review, we vacate and remand for further proceedings consistent with this opinion.

N.L. and the victim in this case had an ongoing sexual relationship that revolved around their mutual drug use. On July 2, 2006, N.L. attended a party at which he consumed 10 to 11 shots of rum and smoked marijuana. At approximately 4:00 a.m., N.L. sent a text message to the victim asking if he could come over. He told the victim that if she wanted to "be with" him, she should stay at her apartment. N.L. then went to the victim's apartment, where they smoked marijuana and engaged in sexual activity.

N.L. was arrested later that day after Covington police filed a complaint in the Juvenile Session of the Kenton District Court charging him with first-degree rape pursuant to KRS 510.040. According to the complaint, N.L. forced sexual intercourse on the victim. Specifically, he bit her on the neck, forced his penis and a cell phone into her vagina, and digitally penetrated her anus. The complaint further alleged that N.L. hit the victim with his hands and made her perform oral sex on him.

On September 1, 2006, N.L. entered a guilty plea to an amended charge of sexual misconduct, a Class A misdemeanor offense. The district court scheduled a dispositional hearing to be held on October 23, 2006. In the interim, the Kentucky Department of Juvenile Justice (DJJ) conducted a mandatory juvenile sexual offender evaluation of N.L. pursuant to KRS 635.510(3). The dispositional hearing was later continued until October 27th because N.L. did not receive a copy of the evaluation report until the originally scheduled date of the hearing.

The evaluator, Myra McGlone, M.A., is a mental health professional with qualifications as a Licensed Psychological Associate who is employed by the DJJ's Mental Health Branch. Her evaluation of N.L. contained the following information: family and youth history; offense-related information, including court records and interviews; sexual history; substance abuse/use history; legal history; educational/employment history; medical/mental health; and her own personal observations/impressions based upon multiple interviews with N.L. and his mother.

According to McGlone, N.L. had known the victim for four to six months and described his relationship with her as revolv-

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

ing around marijuana use. The two began having sex one to two months after they met, but N.L. indicated that the victim understood that it was "just sex" and that they did not have a boyfriend-girlfriend relationship. N.L. told McGlone that he had been partying at a friend's house on the night of the offense. He sent the victim a text message telling her to stay at her apartment if she wanted to "be with" him. N.L. admitted to McGlone that he intended for the victim to believe that he wanted to be her boyfriend so that she would stay at her apartment and he could smoke her marijuana. He further admitted: "I knew that was how it was going to work. If she smokes, she is ready for sex." N.L. told McGlone that he and the victim had sexual intercourse and performed oral sex on one another, but he denied inserting a cell phone into her vagina or digitally penetrating her anus. He also denied using any force against the victim.

N.L. indicated that his brother woke him up the next morning at the victim's apartment and told him that the victim had accused him of raping her. According to N.L., the victim told him that he had forced her to perform oral sex on him by pulling her hair. N.L. left her apartment, but the two continued to argue via text message. During this exchange, N.L. told the victim that she "was lying about some of it." N.L. then went back to his house and went to sleep until the police arrived to arrest him.

Based upon her interview with N.L. and his mother and the other information about N.L.'s background with which she had been provided, McGlone, the evaluator, made the following observations:

[N.L.] used profanity/derogatory terms when discussing having sex. He was disrespectful when referring to the victim, e.g. calling her names. He seemed to view sex and relationships in an unhealthy manner. He said sex was not a big deal and appears to have poor boundaries in his relationships.

[N.L.] appears to engage in promiscuous and careless casual sex. His sexual behavior appears to be a "lifestyle" that, although selfish and disrespectful to women, is not necessary illegal unless he goes too far, as in this case. There are many adult men living similar "lifestyles" who never acquire charges. The crux of the risk appears to be the possibility that he'll go too far in his self-centered use of the woman during his otherwise consensual sexual behaviors. He has shown that he is willing to manipulate/con another person to meet his needs. In this case, he manipulated [the victim] by misleading her to believe they could be together as a couple if she met him at her apartment, knowing he could smoke her marijuana and have sex with her. However, it does not appear that he engages in fetishes or other behaviors to achieve deviant arousal. Furthermore, it does not appear that he is a sexual predator or pedophile.

Along with the above-mentioned factors, it must also be considered that [N.L.] has a history of engaging in high risk behaviors. He has used marijuana and alcohol regularly for some time. He often engages in causal [sic] sexual relations while high on drugs. It appears [N.L.] has been living a lifestyle of self-indulgence, whether it is alcohol, drugs, or sexual behavior, and not considering the consequences. He possesses many thinking errors that justify his behavior. He has been unsuccessful in past community interventions (drug court, Job Corps). Ms. Monfort said [N.L.] was non-compliant while on probation in the community. Given this, it is unlikely [N.L.] would be successful at treatment

in the community. He also has a great deal of unstructured time given he is not in school or working.

[N.L.'s mother] is aware of [N.L.'s] behavior but has been unable to manage it in the past. It seems [N.L.] is accustomed to being given a great deal of freedom by his mother. She agrees that he needs substance abuse treatment but does not believe he needs counseling to address his sexual behavior or boundaries.

McGlone's assessment of N.L.'s risk of re-offending was conducted using the Juvenile Sex Offender Assessment Protocol II (J–SOAP II) test and the Estimate of Risk of Adolescent Sexual Offense Recidivism (ERASOR 2.0) test. She found that the following factors suggested a higher risk of re-offending:

- Preoccupation with sexual thoughts.
- Cognitive distortions about healthy sexual relationships.
- Use of violence during sexual offense.
- The offense was planned/calculated.
- Diverse sexual assault behaviors.
- Charged/arrested for any legal problem before age 16.
- Negative peer associations.
- Parent not supporting sexual offense specific treatment.
- Environment supporting opportunities to re-offend sexually.
- Multiple types of offenses. His legal history involves both sexual and conduct offenses.
- Exposure to domestic violence in the past.
- Failure to accept responsibility for offense.
- No evidence of empathy.
- No evidence of remorse/guilt.

- Poor management of sexual urges. He has a sexually promiscuous lifestyle.
- Instability in school/work. He is not in school nor has a job.

She also noted that the following factors further served to elevate N.L.'s risk of re-offending:

- Substance abuse.
- He has been diagnosed with Attention Deficit Hyperactivity Disorder.
- Failure to comply with and benefit from treatment.

McGlone's evaluation ultimately resulted in the following conclusions and recommendations:

Pursuant to KRS 635.510, teenage juveniles adjudicated guilty of a misdemeanor sexual offense may be declared juvenile sexual offenders. The Judge has the discretion in this matter.

Overall, [N.L.] appears to be a moderate risk to re-offend and therefore should be declared a juvenile sexual offender. He should complete sex offender-specific counseling. A significant part of [N.L.'s] treatment should also involve treatment of his substance abuse issues and understanding of how this behavior places him at risk to sexually re-offend.

These findings were approved and signed by Mike Rinderle, Psy. D., a Licensed Clinical Psychologist with the DJJ. They were subsequently incorporated into a Predisposition Investigation Report filed by the DJJ on October 27, 2006. The report recommended to the district court that N.L. be declared a juvenile sexual offender and that he be committed to the custody of the DJJ, where he would be detained pending placement.

At the ensuing dispositional hearing, counsel for N.L. requested a continuance so that he could retain an expert to conduct an independent sexual offender eval-

uation in an effort to challenge the DJJ's findings. The Commonwealth did not object to this motion but noted that it was satisfied with the DJJ's evaluation and that its position was unlikely to change. The district court expressed skepticism because N.L. had already had a sexual offender evaluation. Counsel for N.L. responded by arguing that the evaluation was not independent and that the court would likely benefit from additional information on the issue before making its decision. N.L. also voiced objections to the content and conclusions of the DJJ's evaluation and asked the court to find that committing him as a juvenile sexual offender was not the "least restrictive alternative." The court rejected N.L.'s arguments and followed the DJJ's recommendation that N.L. be classified as a juvenile sexual offender. No other testimony or evidence was presented. N.L. was committed to the custody of the DJJ and eventually placed in the DJJ's group home in London, Kentucky.

N.L. filed a notice of appeal to the Kenton Circuit Court on November 14, 2006. He presented two questions: (1) whether he was entitled to a continuance of his dispositional hearing so that he could retain an expert to conduct an independent sexual offender evaluation; and (2) whether his commitment to the custody of the DJJ was the "least restrictive alternative."

On May 11, 2007, the circuit court entered an opinion and order that affirmed the decision of the district court. The circuit court concluded that N.L. was not entitled to a continuance so that he could retain an expert because such was not required by KRS 635.510(3). That statute is as follows:

> Upon final adjudication by the juvenile court under subsection (2) of this section, the juvenile court judge shall order a juvenile sexual offender assessment to be conducted on the child by the Department of Juvenile Justice treatment program or by a qualified professional approved by the program which shall recommend whether the child be declared a sexual offender and receive sexual offender treatment. Upon receipt of the findings of the assessment, the juvenile court judge shall determine whether the child shall be declared a juvenile sexual offender, and, if so, shall initiate a referral to the Department of Juvenile Justice treatment program for treatment.

The circuit court concluded that because the district court ordered and reviewed the assessment required by the statute and the DJJ's recommendation that N.L. be classified as a juvenile sexual offender in its determination, no other action was required under the statute. The court also held that the placement of N.L. in the custody of the DJJ did not violate the "least restrictive alternative" requirement of KRS 600.010(2)(c) because he had demonstrated a prior history of being noncompliant while on probation and of requiring a high degree of monitoring. This appeal followed.

The questions presented for our review are whether N.L. was entitled to a continuance of his dispositional hearing so that he could retain the services of an expert witness, and whether his commitment to the custody of the DJJ was the "least restrictive alternative."

We first address N.L.'s argument that the district court erred by denying his motion to continue so that he could procure an independent sexual offender evaluation. Essentially, the district court concluded, and the circuit court agreed, that N.L. was entitled only to the sexual offender evaluation provided for in KRS 635.510(3), i.e., the one conducted by the DJJ.

██ As a general rule, trial judges have broad discretion to grant or deny a continuance. *Woodall v. Commonwealth,* 63 S.W.3d 104, 128 (Ky.2001). Consequently, we do not interfere with the exercise of that discretion unless it is clearly abused. *Stallard v. Witherspoon,* 306 S.W.2d 299, 300 (Ky.1957). With that said, however, the considerable discretion given to trial courts in such matters does not authorize the refusal of a continuance when circumstances show that justice requires one. *Samuels v. Commonwealth,* 154 Ky. 758, 159 S.W. 575, 578 (1913). We may overrule a trial court's decision to deny a continuance "where, for example, established rules of practice and the accused's fundamental rights are disregarded[.]" *Knuckles v. Commonwealth,* 261 S.W.2d 667, 669 (Ky.1953).

The circuit court was correct that there is nothing within the language of KRS 635.510(3) suggesting that a defendant may use an expert witness to challenge the conclusions of a juvenile sexual offender assessment. On the other hand, neither is there anything within that provision that prohibits a defendant from doing so. Indeed, such evidence appears to be expressly permitted by KRS 610.110, which addresses dispositional hearings for juvenile status and public offenders—including juvenile sexual offenders—under KRS Chapters 630 and 635. KRS 610.110(1).

Of particular note, KRS 610.110(2) provides:

> At the disposition, all information helpful in making a proper disposition, including oral and written reports, shall be received by the court in compliance with subsection (1) of this section and relied upon to the extent of their probative value, provided that the parties or their

counsel shall be afforded an opportunity to examine and controvert the reports.

██ We also note that KRS 610.110(1) specifies that "[t]he disposition shall determine the action to be taken by the court **on behalf of, and in the best interest of, the child**[.]" (Emphasis added). These legislative directives would not be satisfied if courts were permitted to merely rubber stamp the recommendations of the DJJ without allowing juveniles a fair opportunity to challenge and rebut those recommendations. Instead, we are of the opinion that the General Assembly explicitly rejected such a practice by requiring that "all information helpful in making a proper disposition . . . shall be received by the court" to assist in its decision and that "the parties or their counsel shall be afforded an opportunity to examine and controvert" any reports tendered at the disposition. KRS 610.110(2). This language demonstrates a clear intent on the part of the General Assembly to provide courts with probative information from all concerned parties so that they can make informed decisions regarding the best interests of the child. It also reflects an intent to allow juveniles the opportunity to controvert any reports, such as a dispositional assessment, offered against them.

██ The use of expert testimony is one obvious method with which to rebut a dispositional assessment. In *W.D.B. v. Commonwealth,* 246 S.W.3d 448 (Ky.2007), the Supreme Court of Kentucky dealt with another juvenile sexual offender case in which the question of what evidence should be allowed at a disposition hearing was in issue. The Court addressed the question of whether the trial court erred in declining to hold a *Daubert*[2] hearing to determine the reliability of the methods used by

**2.** *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

the DJJ in evaluating the appellant for treatment as a sexual offender. The appellant requested the *Daubert* hearing to challenge the reliability and validity of the tests used to assess his risk of re-offending. Those tests were the same J–SOAP II and ERASOR evaluations that were used here.

The Court ultimately concluded that the appellant was not entitled to a *Daubert* hearing to challenge these tests because the DJJ evaluator had been subject to cross-examination and because the appellant had had the opportunity to refute the results of the sexual offender assessment. *Id.* at 458. What is notable is that the appellant refuted those results through the use of an independent expert witness who conducted his own sexual offender assessment to counter the report that had been produced by the DJJ pursuant to KRS 635.510(3). *Id.* at 457–58. While the Supreme Court did not explicitly hold that a juvenile may utilize the services of an independent expert in a sexual offender dispositional hearing, it may be inferred from its opinion that the practice is permitted. Moreover, such an inference is consistent with the plain language of KRS 610.110(2). We also note that the Court has previously looked favorably upon parties being allowed to use expert witnesses to rebut risk assessment reports presented at a sentencing hearing where permitted by statute. *See Hyatt v. Commonwealth,* 72 S.W.3d 566, 575 (Ky.2002).

■ Accordingly, we conclude that the district court erred in denying N.L.'s motion for a continuance, and we therefore vacate and remand for a new disposition hearing in which N.L. shall be allowed to present evidence on his behalf pursuant to KRS 610.110.

■ Because of our decision to vacate and remand, we need not address the parties' remaining arguments. However, our examination of the record compels us to observe that before a juvenile offender is committed to the custody of the DJJ, the court must demonstrate compliance with KRS 600.010(2)(c). This statute provides that prior to removal from his home "[t]he court shall show that other less restrictive alternatives have been attempted or are not feasible in order to insure that children are not removed from families except when absolutely necessary[.]"

We have reviewed the record of the dispositional hearing and the district court's dispositional order and note that the court failed to make the findings required by KRS 600.010(2)(c). We emphasize that the plain language of the statute makes such findings compulsory. *See X.B. v. Commonwealth,* 105 S.W.3d 459, 461 (Ky.App.2003); *cf. Vandertoll v. Commonwealth,* 110 S.W.3d 789, 795–96 (Ky. 2003); KRS 446.010(30).

Accordingly, the opinion of the circuit court is vacated and this claim is remanded to the Kenton District Court for further consistent proceedings.

WINE, Judge, concurs.

KELLER, Judge, concurs in result and files separate opinion.

KELLER, Judge, concurring in result.

As the majority has correctly noted, as a general rule trial judges have broad discretion to grant or deny a continuance. *Woodall v. Commonwealth,* 63 S.W.3d 104, 128 (Ky.2001). In this case, the district court did in fact grant a four-day continuance to N.L.'s counsel due to the fact that N.L.'s counsel's first chance to receive and therefore review the juvenile sexual offender assessment report (hereinafter report) was the day of the dispositional hearing. The continuance was granted to allow time for N.L.'s counsel to analyze the report and prepare any appropriate court examination. While I agree with the ma-

jority that the mandates of justice require some limitation on the considerable discretion given to trial courts in the granting or refusal of a continuance, I disagree that the facts of this case render that the district court abused its discretion. As noted by the majority, the Department of Juvenile Justice (hereinafter DJJ), may undertake a juvenile sexual offender assessment pursuant to the authority of KRS 635.510(3). Furthermore, pursuant to this statute, upon receipt of the findings of the assessment the juvenile court judge still has the discretion to determine whether the child should be declared a juvenile sexual offender. A review of the audio record in the matter before us reveals that at the dispositional hearing, N.L.'s counsel made a second motion for continuance and request for an *ex parte* hearing. It is somewhat unclear from this writer's review of the record the exact purpose for the *ex parte* hearing requested by N.L.'s counsel. However, N.L.'s counsel does cite the potential confinement of N.L. for up to three years and the need for additional time to provide a response (assumingly to the report) already tendered to the court. The Commonwealth stated on the record it had no objection to defense counsel's request.

A further review of the record reveals that the court was unclear as to the reason for the requested *ex parte* hearing as the court specifically questioned N.L.'s counsel regarding same. Further, it is this writer's opinion after review of the audio record of the hearing that N.L.'s counsel did not directly address the court's question on this matter. Additionally, the court stated that it was concerned that N.L. had been in detention too long and that a further delay would only further lengthen his detention time. Therefore, the court ordered N.L.'s disposition be implemented "per the recommendations of DJJ." The court clearly articulated a sound and reasonable basis for denying the motion for a

continuance, and it appears from the record that the court was referencing the best interest of N.L. Therefore, it is my opinion that the district court did not abuse its discretion.

However, a review of KRS 31.185, which references *ex parte* requests for funds reveals the following:

> The defending attorney may request to be heard ex parte and on the record with regard to using private facilities under subsection (1) of this section. If the defending attorney so requests, the court **shall conduct** the hearing ex parte and on the record.

KRS 31.185(2) (emphasis added).

The aforementioned mandates that once a defense attorney requests an *ex parte* hearing under the statute, the court **shall conduct** the hearing *ex parte* and on the record. The district court should have conducted an *ex parte* hearing at the request of N.L.'s counsel. At the conclusion of an *ex parte* hearing authorized by KRS 31.185(2), the district court retains the discretion to decide whether or not public funds shall be expended as requested. Therefore, nothing in this opinion shall be construed as directing the district court to order that public funds shall be used to obtain a second juvenile sexual offender assessment by a provider of the defendant's choice. It should also be noted that it was unclear to the district court and it is unclear from the record as reviewed by this writer what exact purpose N.L.'s counsel had in mind for the requested *ex parte* hearing. District courts, in particular juvenile court divisions, handle many matters at an often rapid pace to keep up with the demands of their docket. It is incumbent on counsel to make clear to the court what exact relief they are requesting when that request is made.

Furthermore, the majority is critical of the district court for failing to make findings as required by KRS 600.010(2)(c).

While it would have been preferable for the dispositional order to contain some additional reference to the court's decision to commit N.L. to DJJ, the court record in and of itself references N.L.'s prior history of non-compliance while on probation. The majority cites us to *X.B. v. Commonwealth,* 105 S.W.3d 459, 461 (Ky.App.2003), to support its position in reference to the district court's failure to make compulsory findings. However, as noted in footnote three of that opinion, "[h]ad the record clearly indicated that X.B. had been before the court on previous occasions and that the court had attempted lesser restrictive alternatives, then the result herein may have been different." *Id.* at 461. That precise factual scenario is supported by the record in this case which reveals that N.L. had been noncompliant while on prior probation with the district court.

Accordingly, I would hold that the opinion of the circuit court, upon discretionary review from the district court, be vacated and this matter remanded to the Kenton District Court so the court may hold a hearing as mandated by KRS 31.185(2).